Mildred WOODS, Appellant,

v.

PANHANDLE & SANTA FE RAILWAY COMPANY et al., Appellees.

No. 6786.

Court of Civil Appeals of Texas.

Amarillo.

June 16, 1958.

Rehearing Denied Sept. 8, 1958.

1. Walton testified that while he and a Mr. Killingsworth from Lubbock were looking over the damaged building, M. D. Edwards appeared and asked what Killingsworth was doing there. When told that Killingsworth was figuring on the repair job, Edwards said: "Well there isn't no use in having him, because this is my job." The next day Teague and Walton met with Edwards and according to Walton a lengthy conversation ensued. "Mr. Edwards went into quite lengthy detail about how he wanted to uphold his reputation as a builder and that he had worried about the building was liable to fall and a lot of nights he couldn't go to sleep for worrying about it falling, and said he would rebuild the building for what insurance we got, if any, and Joe Teague and myself both told him that we didn't see where we had any grounds to collect insurance, but if we did he was welcome to all of it, and that was perfectly agreeable with him at that time."

954

Monning & Monning, Amarillo, for appellant.

Adkins, Folley, McConnell & Hankins, J. L. Bagwell, and Lewis Jeffrey, Amarillo, for appellees.

NORTHCUTT, Justice.

Mildred Woods instituted this suit against Ralph Jones, Raymond Lewis Duchesne and Panhandle & Santa Fe Railway Company seeking to recover damages for the loss sustained by her in the death of her husband, Marvin W. Woods, caused by the collision of a Studebaker automobile, in which her husband was riding, and a railway train of appellant, Panhandle & Santa Fe Railway Company.

Appellant pleaded that on or about January 13, 1956, she and her husband stopped by the used car lot of Ralph Jones to see about purchasing an automobile. She alleged that Duchesne, an agent for Jones, acting within the scope of his employment, displayed and demonstrated to Marvin W. Woods a Studebaker automobile that Jones proposed to sell to Woods; that in the demonstration of the automobile, Woods was a passenger and guest to whom Jones and Duchesne owed a high degree of care, and that during such demonstration Duchesne drove the automobile into a train operated by the railroad, and that such action constituted negligence and such negligence was a proximate cause of the death of Woods. It being the contention of appellant because the lights of the train blended with the lights from the city of Amarillo and the Texas Refinery Company that the railroad company was negligent in not installing and maintaining a signal light and bell, or crossarms or maintaining a flagman to warn approaching motorists of the presence of approaching trains and that such crossing was extrahazardous because of the permanent conditions and required extraordinary signal lights, bells or flagman, and then alleged such failure on the part of the railroad company to provide such extraordinary means constituted negligence and was a proximate cause of the collision and death of Marvin W. Woods. Appellant further contended the railroad negligently failed to sound a bell or whistle at a distance of at least 80 rods from the place of crossing Eastern Street continuously, and it failed to equip the locomotive engine of the train with proper lights.

After all the evidence was in, Jones and the railroad company made motions for an instructed verdict and the court instructed a verdict for all defendants, and entered judgment that the plaintiff recover nothing. From this judgment appellant perfected this appeal.

The Studebaker automobile in question was owned by Ralph Jones, but there is nothing in this record to establish that Duchesne was an agent or employee of

Jones or was acting in the scope of his employment. The undisputed record as shown by the evidence introduced by appellant shows that Jones did not request Duchesne to demonstrate the automobile to Marvin W. Woods and neither was there any evidence to show that he was an agent or employee of Jones, but on the contrary, Woods, Duchesne and Hank Hia went together to try to start the automobile. Woods and Duchesne got in the automobile with Duchesne doing the driving and Hia was pushing the automobile with another motor vehicle trying to get the Studebaker started. Just prior to the accident Hia stopped pushing the automobile and the automobile rolled on into the train. The supposition would be that Hia saw the train and that was the reason he stopped pushing the Studebaker. Duchesne testified he couldn't figure out why Hia stopped pushing it. The next thing Duchesne knew there was a train in front of him. He stepped on the brakes and the brakes were gone and they hit the train either at the fifth, sixth or seventh car behind the engine. Woods got into the car of his own volition, knowing the car would not start and they all three were trying to start it by pushing the same. Duchesne saw the train in time to stop if he had had brakes. There is no question but what they knew the brakes were bad and the lights were dim. As to the failure to ring the bell and blow the whistle that is for the purpose of warning that a train is approaching the crossing and the train crew was not required to continue to sound the whistle and ring the bell after the train is upon the crossing. Under this record we do not consider Woods was a guest of Jones or Duchesne but consider that Woods, Duchesne and Hia were all acting together trying to get the Studebaker started and that the carelessness of all three acting together as they did under the circumstances was the sole cause of the accident and under the record in this case reasonable minds could come to no other

conclusion than that the employees of the railroad company were not guilty of negligence proximately causing this collision.

Concerning the question of extrahazardous crossing, it is seldom that you find a case where the facts are so similar that you may consider the case almost identical. In the case of Texas & N. O. R. Co. v. Stratton, Tex.Civ.App., 74 S.W.2d 741, 743 (writ refused), the facts were very similar to this one but in that case the matter was presented to a jury and on the findings of the jury judgment was granted for the plaintiff. The appellate court reversed and rendered the case and in so doing stated:

"The evidence is insufficient to show that this crossing, even under the existing bad visibility, was an extrahazardous crossing, but even if it be regarded as such the evidence clearly shows that flagmen, lanterns, or other signals could not and would not have avoided this accident. If a moving box car or a burning automobile could not be seen, then certainly a flagman with a lighted hand lantern could not have been seen. Whether you accept the evidence that the visibility was good, or that it was bad, you reach the conclusion that appellant could not be liable. The use of signs, signals, and warnings is for the purpose of letting persons using the highway know of the presence of the crossing, and that a train is approaching the highway. Under the facts in this case, after the train had completely blocked the highway and was lawfully passing over the highway, it was within itself sufficient warning to persons using the highway to beware of the train."

We will not quote further from the Stratton case but believe the reasoning and holding of that case is directly in point here.

Judgment of the trial court is affirmed.