E. G. GASPERSON et al., Appellants,

v.

CHRISTIE, MITCHELL & MITCHELL COMPANY, Inc., et al., Appellees.

No. 16832.

Court of Civil Appeals of Texas.

Fort Worth.

June 9, 1967.

Rehearing Denied Sept. 15, 1967.

---

Davis, Callaway & Marshall and Clyde M. Marshall, Jr., Fort Worth, for appellants E. G. Gasperson, J. J. Pistocco, Adrian Gasperson and J. L. R. (Bob) Gasperson.

Simon, Crowley, Wright, Ratliff & Miller and Wayne A. Rohne, Fort Worth, for appellant Alfred A. Drummond.

G. Roy Pate, Fort Worth, for appellee Worldwide Petroleum Corporation.

Carrington, Johnson & Stephens and Charles R. Cravens, Jr., and Ronald L. Neill, Dallas, for appellees Whitehall Oil Co., Inc. and North Central Oil Corporation.

Smith & Fulton and Paul Smith, Houston, Sewell & Forbis, Decatur, Vinson, Elkins, Weems & Searls and Ben H. Rice, III, Houston, for appellees George Mitchell & Associates, Inc., et al.

## OPINION

MASSEY, Chief Justice.

In the trial court E. G. Gasperson and others brought suit as plaintiffs against defendants Christie, Mitchell & Mitchell Company, Incorporated, et al., for varying forms of relief.

Part of the action of plaintiffs was severed from that part as to which the judgment with which we are presently concerned has application. The severed portion will be disregarded to the extent possible. As tried below the action of plaintiffs upon which judgment was rendered may here be treated as having been wholly defeated, with a "take nothing" decree in favor of the defendants.

The plaintiffs appealed. In connection therewith we quote from their brief, as follows: "Appellants restrict their complaints in this appeal to the refusal of the trial court to sustain their right to a one-thirty-second (1⁄32) overriding royalty interest in the Flavis Greer portion (being the north 150 acres, approximately) of the Jeff P. Taylor tract, and their right to a $10.00 per acre bonus with respect to such portion of the Jeff P. Taylor lease tract, and the two Wilson lease tracts, and errors of the trial court which affected the determination of these matters."

We affirm the judgment rendered below.

An initial question to be resolved relates to the burden of proof on a suit for declaratory relief in which an "overriding royalty" owner under an oil and gas lease seeks to have established that the lease had *not* expired because of a failure of production thereunder "in paying quantities" after the expiration of the primary term. In other words it is to be assumed that the primary term during which delayed rentals are payable in absence of production, in order to maintain the lease in effect for the primary term, had long since expired. But it is to be furthermore assumed that there was a lengthy period thereafter during which there was production of oil and/or gas and by reason of which the lease was continued in effect. Then it is to be assumed that there arises a dispute as to whether there is a cessation of production from the lease. For purposes of resolving the question it may be assumed that there were no additional drilling or reworking operations which would create any extension of the lease.

The law is well settled in instances where it is the lessee who is contending that his lease has not expired, and become forfeited under its provisions, as against a lessor who brings suit to have it declared that the minerals under his land have reverted to him by reason of the cessation of production "in paying quantities". See discussion in Clifton v. Koontz, 160 Tex. 82, 325 S.W.2d 684, 79 A.L.R.2d 774 (1959).

Under the authorities it is established that the lessor has the "laboring oar" and that his is the obligation to plead and introduce evidence to prove that there *has been* a cessation of production from the lease "in paying quantities" as a matter of fact or in law. If the evidence adduced upon the trial makes the question one of fact to be resolved by the jury the lessor, as the complaining party, continues with his "laboring oar" and as part of his burden must insist that special issues be submitted to the jury where by a "preponderance of the evidence" inquiry is made as to whether the facts are existent upon which he predicates his right to regain the lease.

But what of a similar situation when there is no dispute between the lessor or lessee as to whether there has been such a cessation of production "in paying quantities" as to entitle the lessor to invoke forfeiture? What if there has been such a dispute but it has been resolved by their entry into a new lease contract as to all or part of the same lease as though there had never been any prior lease? And furthermore, what of such a situation when one with an intervening contract with the lessee (under the lease treated as extinguished, or

as if it had never been existent) appears in court as a plaintiff seeking to establish that as between himself and the lessee the prior lease continues in effect,—and that by reason of contract, whereby the lessee originally acquired rights, there persists such a plaintiff's entitlement to an "overriding royalty" interest in minerals produced therefrom (as to any part)?

██ In the particular case posed by this appeal we may view the situation as one where such a plaintiff acquired all the lease rights of the original lessor (land owner) but in the assignment thereof to the ultimate lessee, who obtained production (which continued the lease in effect beyond its primary term), had obtained said lessee's contractual agreement for the reservation of his interest to the extent of an entitlement to an "overriding royalty" in the minerals produced during the period the lease continued in effect.

It is obvious that such a plaintiff could have no titular interest in the leasehold estate, as from the original lessor, unless the lessee's interest therein persisted and continued after the primary term of the lease by reason of production therefrom "in paying quantities". The interest of such a plaintiff necessarily depends upon the continuance of the lessee's interest for it is thereupon conditioned.

██ Thus, in a dispute between such a plaintiff and the lessee as to whether the lease continued in effect because there continued to be a production of minerals therefrom "in paying quantities" we have the exact converse of the usual action where it is the lessor who is in position of a plaintiff contending against a defendant lessee.

It is to the interest of such a plaintiff that it be declared that production continued, for if such be established it would follow that the lease remains in force and effect. He is, therefore, obliged to bring his suit under pleadings which allege such to be a fact; and is obliged to adduce evidence to that effect with the burden cast upon him in the submission of special issues. He is obliged to obtain findings in his favor. General rules apply. See 23 Tex. Jur.2d, p. 154, et seq., "Evidence", Sections under Sub. V, "Burden and Degree of Proof".

██ If the evidence produced upon trial by such a plaintiff merely raises issues of fact to be resolved by a jury (i. e., does not show that he is entitled to judgment as a matter of law because there is no question of fact to be resolved) he is obliged to insist that special issues submitting his theory be in the charge given by the court, and if not placed therein he is obliged to make a bill of exceptions because of the court's refusal, or he will be held to have waived the right to such issues. Texas Rules of Civil Procedure 279, "Submission of Issues". In such a case the plaintiff, having waived right to obtain findings under which his right to recovery depends, also waives right to complain because he does not obtain a judgment. Any judgment in his favor would necessarily be based thereon.

██ In a very material aspect of the case presented it must be held that the plaintiffs lost their case—insofar as it was a case which sought to have it declared that their rights to "overriding royalty" persisted because production of minerals "in paying quantities" was continuous from the lease they had assigned to others, thus continuing said lease (and their interest thereunder)—since we are convinced that the whole proof on trial failed to show that they were entitled to prevail as a matter of law. Not being entitled to prevail as a matter of law the plaintiffs were left with a "fact case", i. e. one in which theirs was the burden to prevail by obtaining fact findings upon which application of the law entitled them to a judgment. They failed to discharge the burden for they failed to have fact questions submitted or to complain because appropriate fact questions were not submitted.

The same may be said with reference to the question of whether later leases were in fact taken "in renewal and/or extension" of such (or as to a portion thereof). If the former lease had actually expired according to its terms, any new lease(s) taken would not be "in renewal and/or extension" except by contract of the parties to the new lease(s). Furthermore, even if the contract so provided it would only be binding upon parties in privity to the new contract.

In view of these conclusions we move to the matter of whether the plaintiffs might, under alternative theories, be entitled to their claimed "overriding royalty" interest in the new lease (Flavis Greer), taken on a portion of, but not of the whole of lands comprising the original Jeff P. Taylor lease. We also consider their contentions relative to rights to $10.00 per acre bonus on the new lease.

Here, it is believed, we should copy material portions of the legal instruments under and by reason of which (in part) the plaintiffs contend they are so entitled. To be borne in mind is the fact that plaintiffs, additionally, contend that they should prevail under principles of estoppel, and furthermore because the interest they claim should be imposed upon the new Flavis Greer lease as a constructive trust.

The Original Jeff P.
Taylor Lease (Dated 1/22/48
for a primary term of 10 years)

The lease was a Texas Standard Form of lease commonly termed "Producers 88 Revised 12–42—(With 40-Acre Pooling Provision)." Beyond the "primary term" of 10 years the lease provided that it would continue "as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled hereunder." As applied to a situation where there was production of oil, gas or other minerals at the termination of the "pri-mary term"—so that the lease would continue in effect—it provided as follows: "if after discovery of oil, gas or other mineral, the production thereof should cease from any cause, this lease shall not terminate if Lessee commences additional drilling or reworking operations within 60 days thereafter or if it be within the primary term, commences or resumes the payment or tender of rentals or commences operations for drilling or reworking on or before the rental paying date next ensuing after the expiration of 60 days from date of completion of dry hole or cessation of production."

It was further provided: "The rights of either party hereunder may be assigned in whole or in part, and the provisions hereof shall extend to their heirs, successors and assigns; but no change or division in ownership of the land, rentals or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee. * * *"

It is to be observed that no provision of the lease bears upon any obligation of the lessee to act so that it would continue in force and effect for the benefit of lessor or any other person. Rather does the import bear upon what must be done to continue the lease in effect for the benefit of the lessee, or what condition(s) must exist or continue at varying times if it is to continue in effect for the benefit of the lessee. It is obvious that the origin and development of this form of lease was by and for those in position of lessees, not lessors, and to protect lessees against forfeiture of rights thereby obtained. In particular it is to be noticed that there is no provision which protects a lessor from having the lessee forfeit to him the lessee's rights in any situation where production after the "primary term" causes them to continue in effect but where production later ceases, regardless of cause.

PLAINTIFFS' EXHIBIT 2

(Original Lease Assignment of 11/22/55)
(Placed of record in Lease Records of
Wise County, Vol. 88, Page 361)

"THE STATE OF TEXAS ⎱
"COUNTY OF WISE ⎰

KNOW ALL MEN BY THESE PRESENTS:

"THAT, E. G. GASPERSON and J. J. PISTOCCO (hereinafter called 'Assignor') for valuable consideration received from CHRISTIE, MITCHELL and MITCHELL CO., a Texas Corporation of Harris County, Texas, (hereinafter called 'Assignee') has TRANSFERRED, ASSIGNED AND CONVEYED and by these presents do TRANSFER, ASSIGN AND CONVEY unto the said Assignee the following described oil, gas and mineral leases covering lands situated in Wise County, Texas, to-wit:

"(1) Lease dated January 22, 1948, between Jeff P. Taylor et ux, as Lessors, and Graphie E. Hudson, as Lessee, recorded in Volume 52, Page 345, of the Lease Records of Wise County, Texas, covering 230½ acres of land as therein described.

"* * *

"Assignor hereby excepts from the terms hereof and reserves and retains unto himself, his heirs and assigns, an overriding royalty on the oil, gas and other minerals that may be produced, saved and sold from the above described lands under and by virtue of said leases, said overriding royalty being as follows:

"(a) On oil ⅟₃₂ of ⅞ of all that produced, saved and marketed, the same to be delivered at the well or wells or to the credit of Assignor into the pipe line to which the well or wells may be connected.

"(b) On gas, including casinghead gas or other gaseous substance produced and sold or used off the premises, or in the manufacture of gasoline, or other product

therefrom, the market value at the well of ⅟₃₂ of ⅞ of all of the gas so sold or used, provided that on gas sold at the wells the overriding royalty shall be ⅟₃₂ of ⅞ of the amount realized from such sale;

"(c) On all other minerals mined and marketed, ⅟₃₂ of ⅞ of all, either in kind or value at the well or mine, at Assignee's election.

"The foregoing overriding royalty is expressly made subject to the following terms and conditions;

"1. Said overriding royalty shall be charged with its proportionate part of all severance, production or other taxes and the Assignee shall have the right to use any oil and gas produced from the lease for operations thereon and thereunder and on any unit formed hereunder before calculation of overriding royalty, and *such overriding royalty shall be paid, and only paid, if, as and when production is obtained and saved and Assignee shall be under no responsibility of any kind whatsoever to the Assignor to maintain said lease in effect, or to conduct any operations upon the said property, or to produce any minerals therefrom.* (Emphasis supplied for purposes of the opinion.)

"2. Insofar as the rights of Assignor are concerned, Assignee shall have the right and power to pool or combine the acreage covered by said leases or any portion of such acreage with other land, lease or leases in the immediate vicinity thereof when, in Assignee's judgment, it is necessary or advisable to do so in order properly to develop and operate said premises in compliance with any lawful spacing rules which may be prescribed for the field in which said lands are situated by any duly authorized authority, or when to do so, in the judgment of the Assignee, would promote the conservation of oil and gas in and under and which may be produced from said lands, and with respect to any such unit so formed, Assignee shall execute in writing an instrument or instruments identifying and describing the pooled acreage. In lieu

of the overriding royalty above specified, Assignor shall receive on production from a unit so pooled only such portion of the overriding royalty stipulated herein as the amount of the above described acreage placed in the unit bears to the total acreage so pooled in the particular unit involved. The above privilege and option to pool and unitize shall be applicable and may be exercised with respect to oil, gas and liquid hydrocarbons of gas, or any one or more of said substances.

"3. If said leases cover less interest in the oil, gas and other minerals than the entire and undivided fee simple estate, the said overriding royalty in respect to production under such leases shall be paid only in the proportion which the interest covered by said lease bears to the whole and undivided fee simple estate.

"It is further agreed by and between the parties hereto that if drilling operations on the herein assigned premises, or land pooled therewith, are not commenced within ninety days from the expiration date of each assigned lease, assignee, his heirs or assigns agree to reassign the above described premises to the assignor herein.

"TO HAVE AND TO HOLD the above described property unto the assignee, its successors and assigns, and Assignor, for himself and personal representatives, hereby warrants and agrees to defend the same unto Assignee, its successors and assigns, against every party whomsoever claiming or to claim the same or any part thereof, by, through or under Assignor, but not otherwise.

"EXECUTED this the 22 day of November, 1955.

"/s/ E. G. Gasperson
"E. G. Gasperson

"/s/ J. J. Pistocco
"J. J. Pistocco

"* * *"

PLAINTIFFS' EXHIBIT 3

(10/14/57 Amendment of Original Lease)
(Placed of record in Lease Records of Wise County, Vol. 104, Page 93)

"STATE OF TEXAS)
"COUNTY OF WISE)

"WHEREAS, by assignment dated November 22, 1955, recorded in Volume 88, Page 361, Lease Records of Wise County, Texas, reference hereby made to said assignment for all purposes, E G Gasperson and J J Pistocco transferred, assigned and conveyed unto Christie, Mitchell and Mitchell Co. the following described oil, gas and mineral leases covering lands situated in Wise County, Texas, To-wit:

"(1) Lease dated January 22, 1948 between Jeff P Taylor et ux, as Lessors, and Graphie E Hudson, as Lessee, recorded in Volume 52, Page 345 of the Lease Records of Wise County, Texas, covering 230½ acres of land as therein described.

"* * *

"WHEREAS, the following provision is contained in said assignment, to-wit: 'It is further agreed by and between the parties hereto that if drilling operations on the herein assigned premises, or land pooled therewith, are not commenced within ninety days from the expiration date of each assigned lease, assignee, his heirs or assigns agree to reassign the above described premises to the assignor'; and, it is the purpose of this agreement to amend said assignment by substituting the above quoted provision for the provision as hereinafter set out.

"NOW, THEREFORE, in consideration of the premises, and of Ten Dollars ($10.00) cash in hand paid and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned do hereby amend said assignment by incorporating therein the following provision, in lieu of the provision above quoted, to-wit:

" 'It is further agreed by and between the parties hereto that if operations for drilling

on the herein assigned premises, or land pooled therewith, are not commenced within ninety days from the expiration date of each assigned lease, assignee, its successors or assigns agree to reassign such lease to the assignor herein; provided however, that if assignee obtains a renewal or extension or primary term of any of the assigned leases on or before ninety days from the expiration date of each assigned lease, such renewed or extended lease shall remain in all respects in assignee for such renewed or extended term, and assignors overriding royalty interest on such lease as provided for in this assignment shall be continued and carried over unto such renewed or extended lease; and, provided, further, that assignee shall pay to assignor the sum of Ten ($10.00) Dollars per net acre on each lease which assignee renews or extends the primary term thereof.'

"Said assignment as hereby amended is hereby ratified and confirmed and declared to be in full force and effect upon the terms and conditions set out in said assignment as herein amended.

"IN WITNESS WHEREOF, this instrument is executed this 14 day of October, 1957.

"/s/ E G Gasperson

"/s/ J J Pistocco"

DEFENDANTS' EXHIBIT 31

(Conditional Waiver of Reassignment Right)

"Wichita Falls, Texas
"November 6, 1957

"Christie, Mitchell and Mitchell Co.
"Box 68
"Bridgeport, Texas

"Re: #14035–A–Jeff P. Taylor Lease Wise County, Texas

"Dear Sirs:

"Please be advised that the 90 day reassignment provision with reference to the above captioned lease in Wise County, Recorded in Volume 52, Page 345, is hereby waived and I do hereby ratify and confirm said assignment into you as per Volume 88, Page 361 as amended, as being in full force and effect, provided you commence operations thereon by November 11, 1957.

"Yours very truly,

"/s/ J. J. Pistocco

"J. J. Pistocco"

DEFENDANTS' EXHIBIT 32

This exhibit identical with Exhibit 31, except that it was executed by E. G. Gasperson.

It was following the execution of these letters (Exhibits 31 and 32) that drilling occurred which resulted in production from the original Jeff P. Taylor Lease tract causing the lease thereon to continue beyond the primary term. Such production was on the portion of said lease tract not covered or contemplated by the subsequently executed Flavis Greer Lease. It is the Flavis Greer lease which was negotiated and executed between parties thereto at a time when plaintiffs contended their former rights persisted, in opposition to defendants' contention that they were concluded.

The Flavis Greer Lease
(Dated 1/21/61 for a primary
term of one year)

The lease was on a Veterans' Land Board Lease Form (Revised September 1, 1957), executed by Flavis Greer of Wichita Falls, Texas, to Christie, Mitchell and Mitchell, a partnership, for a consideration of $1,957.00 cash paid to Greer and a like sum of $1,957.00 paid to the Veterans' Land Board, State of Texas, for credit to lessor Greer's account, and of the covenants and agreements of the instrument on the part of the lessee, with a grant of land described aggregating "156.56 acres more or less" and comprising all of the same land formerly comprising the Jeff P. Taylor 236.56 acres of land "SAVE AND EXCEPT" the South 80 acres thereof.

Additional consideration was the covenant of the Lessee to pay to the Veterans' Land Board of the State of Texas for credit to Lessor's account the value of ⅟₁₆th of all oil and/or gas produced and saved from the leased premises and to deliver to the credit of the Lessor, free of cost, in the tanks or pipe lines to which wells may be connected an additional equal ⅟₁₆th part of oil produced and saved from the leased premises, or at Lessor's option ⅟₁₆th of the value of all oil and/or gas produced and saved from the lease premises.

It was provided that: "If no well be commenced on said land, hereby leased, on or before the 21 day of February 1961, this lease shall terminate as to both parties."

It was provided that: " * * * it is understood that as long as this tract of land is under Contract of Sale and Purchase agreement with the Veterans' Land Board, the Board shall be entitled to receive Lessor's portion of all rental and royalty payments under this lease for credit to his account if and when the Lessor or his assignees become delinquent in payment of installments due under the terms of the Contract of Sale and Purchase agreement and further, the Lessee, by acceptance of this lease, if he elects to pay delay rentals, agrees to make such payments to the Board upon mailing by the Board of delinquency notice by certified mail. * * * "

Additional provisions included these covenants and conditions ordinarily found in oil and gas leases, plus many more which were inserted at the obvious instance of the Veterans' Land Board and/or Flavis Greer.

Production ceased from the land covered by the Taylor lease on or about date of March 18, 1960 and such cessation continued until July 5, 1960, a period in excess of 60 days, without commencement of additional drilling or reworking operations. Such production as there had been was by the Whitehall Oil Company, Incorporated, on the north 80 acres of the Taylor lease (not a part of the Flavis Greer lease of January 21, 1961) to which it had obtained a "farm-out" from Christie, Mitchell and Mitchell Company. The production therefrom was stopped by Whitehall's employee through the device of turning a valve on March 18, 1960. It was explained in the evidence that production would have continued but for such action, and the reason for the action was because of "overproduction".

On and prior to the time of the disputed forfeiture or lease termination there had been a change in ownership of the reversionary interest of the lease. The south 80 acres, on which was located the well drilled by Whitehall Oil Company, Incorporated, belonged to Clifton Smith. The remainder of the land—originally encompassed by the Taylor lease—belonged to Flavis Greer. It is to be remembered that we are here concerned only with rights in dispute under the land of Flavis Greer.

It was Christie, Mitchell and Mitchell, a partnership, which on January 21, 1961, negotiated a new lease on the 156.56 acres, with Flavis Greer as lessor. The partnership may be distinguished from Christie, Mitchell & Mitchell Company, Inc. though for purposes of the appeal we may disregard the distinction. The facts show that agents for the company and the partnership were one and the same persons. Both would be bound insofar as questions exist upon plaintiffs' rights herein asserted. By said newly negotiated lease the lessee obligated itself to institute drilling operations. Said operations ensued and proved successful, production therefrom being realized.

Of course, the situation and circumstances whereby Whitehall Oil Company, Incorporated, intentionally shut off that production which until such time was holding the Taylor lease in effect (thus resulting in a dispute upon lease forfeiture) presented occasion for plaintiffs Pistocco and Gasperson to feel that they had suffered mistreatment. Because thereof they plead under principles of estoppel on the theory that they had been defrauded. Though later

disregarded by the Court, on motion, there were special issues bearing thereupon submitted to and answered by the jury; the effect thereof being as follows:

Sp. Issue No. 9. Defendants represented to Plaintiff, E. G. Gasperson, during their negotiations with Flavis Greer with respect to the north 156.56 acres of the Jeff P. Taylor Lease Tract that the Taylor Lease was still in effect and would be preserved to continue the 1/32 overriding royalty interest of the Plaintiffs in such tract.

Sp. Issue No. 10. Such representation to E. G. Gasperson was for the purpose of inducing Plaintiffs to refrain from any action on their part with respect to protecting their overriding royalty interest in the north 156.56 acres of the Jeff P. Taylor Lease Tract.

Sp. Issue No. 11. E. G. Gasperson relied upon the truth of such representation.

Sp. Issue No. 12. Plaintiffs were induced by such reliance on such representation to refrain from taking any independent action to preserve their overriding royalty interest in such north portion of the Jeff P. Taylor Lease Tract.

Sp. Issue No. 13. In negotiating with and effecting the new lease from Flavis Greer in January, 1961, the Defendants, Christie, Mitchell & Mitchell Company and Christie, Mitchell & Mitchell (the partnership), acting through their agents, took the position and contended that the Jeff P. Taylor Lease was still in full force and effect as to the entire 236.56 acre tract by reason of production from the Whitehall No. 1 Jeff P. Taylor Well.

Sp. Issue No. 14. The action of Defendants in taking the new lease from Flavis Greer in January, 1961, with respect to the north 156.56 acres of the Jeff P. Taylor Lease tract, was a compromise and settlement in order to avoid a lawsuit with Flavis Greer.

Sp. Issue No. 15. The Defendants, and George P. Mitchell, acted in bad faith toward Plaintiffs in the manner and method of taking the lease from Flavis Greer in January, 1961.

As applied to the special issues submitted to and answered by the jury we are in agreement with the conclusion of the trial court, as stated in the judgment, that they were proper to be disregarded as having no support in the evidence. Such evidence as appears in the record is upon examination disclosed to be by way of conversations with plaintiffs upon occasions which were either a time prior to March 18, 1960, when the Taylor lease was in fact continuing in effect because of the production, or subsequent to the time Christie, Mitchell and Mitchell, a partnership, successfully negotiated the Flavis Greer lease on January 21, 1961.

Contentions in regard to said special issues are necessarily predicated upon an alternative and contradictory theory to plaintiffs' primary contention that the entire Taylor lease continued in effect at all times or at least until there was a negotiation of the new Flavis Greer lease. For purposes of such alternative theory plaintiffs necessarily conceded that the Taylor lease had expired by its own terms and that the new Flavis Greer lease was taken on unleased land. It is upon the interest of the lessee, acquired therein, that they seek to impose and impress the "overriding royalty" interest claimed by them, plus the payment of the $10.00 per acre bonus they claim entitlement.

Plaintiffs are hence in position where they seek by estoppel to create a cause of action for recovery of contractual rights in the Flavis Greer lease. This they cannot do because estoppel is defensive in character and may not in and of itself create a cause of action under which a recovery is to be obtained. Scott v. Industrial Life Insurance Company, 411 S.W.2d 769 (Dallas Civ.App., 1967, no writ hist.). Furthermore, even had there been an oral contract between the parties, plus consider-

ation deemed adequate in law, an estoppel with respect to interests in land cannot arise unless the party claiming the estoppel has also changed his position in some objective way in reliance thereupon, as by going into possession and making permanent and valuable improvements with the consent of the vendor. Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216 (1921). Also, the Statute of Frauds is applicable where the plaintiff seeks to establish a cause of action by proof of an oral contract, the subject matter of which is found in a preceding agreement in writing. 26 Tex.Jur.2d, p. 155, "Frauds, Statute of", § 5, "Oral modification or rescission of written agreement."

For these additional reasons the trial court properly disregarded answers to special issues, numbers 9 to 15, inclusive.

 Certainly the situation as described to this point would not support a constructive trust in the new oil and gas lease taken from Flavis Greer after expiration of the Taylor lease. Rogers v. Winn, 329 S.W.2d 319 (San Antonio Civ.App., 1959, writ ref. n. r. e.). The fact that people have had prior dealings with one another and that one party subjectively trusts the other does not establish a confidential relationship. For a constructive trust to arise there must be a fiduciary relationship before, and apart from, the agreement made the basis of a suit to establish the existence of such. Consolidated Gas & Equipment Co. of America v. Thompson, 405 S.W.2d 333 (Tex.Sup., 1966). As a matter of law a constructive trust could not have existed under the circumstances of the instant case and the trial court did not err in failing to submit fact issues bearing thereon.

There is an excellent discussion of application of constructive trust principles, including effect thereon of contractual provisions militating against imposing such in an oil and gas lease in Sunac Petroleum Corporation v. Parkes, Tex., 416 S.W.2d 798. Also discussed therein is the matter

of whether and when the taking of a new lease may be treated as taken in renewal and extension of a prior lease.

Not mentioned, heretofore, was the fact that while the original Taylor lease was being held in effect by production it was for a certain period "pooled" (for gas production only) with an adjoining tract, called the Hanna Lease. This pooling began in December of 1957. The "pooling", as by contract or agreement, ended on or before March 8, 1960 by release. The only evidence relative to production from the Hanna Lease was by a disinterested party, one Henry Grace. His testimony was that he acquired new leases on the Hanna land the first of the year 1960, at which time there was no well on the lease tract, nor any production of minerals therefrom. His testimony went further. It was to the effect that prior to his own drilling on said lease tract that no other oil and gas well had been drilled on the particular lease tract. We feel certain that in view of the undisputed evidence it is proper to completely disregard the fact that the Taylor leased land had ever been "pooled" with any other.

We may disregard, and do, the fact that Flavis Greer purchased the land termed the Flavis Greer lease tract from the Veterans' Land Board of the State of Texas under purchase and sale contract so that deed to him was delayed. Greer's lease was satisfactory to the Veterans' Land Board, which approved it. The fact that material conveyances and contracts, even including final transfer of title in 1962, bear recitations that they were subject to the original Taylor lease is to be treated as meaningless for purposes of resolving the questions posed on appeal.

We, furthermore, consider inconsequential the fact that on December 4, 1957, defendant Christie, Mitchell & Mitchell Company made a loan to plaintiff E. G. Gasperson upon consideration and in part received security in the form of a conditional conveyance of an undivided one-half interest in all his royalty, overriding royalty and min-

eral interest in certain leases—including the Jeff P. Taylor lease—to be held in trust as such security. In no sense applicable to the questions posed by the appeal would such create any fiduciary relation between the parties to the loan transaction which would enure to any plaintiff's benefit under the theory of a resulting fiduciary relationship of the parties, and correspondent resulting fiduciary obligation on the part of Christie, Mitchell & Mitchell Company, inhibiting resistance to the claim made against it under any theory of plaintiffs' action.

■ The circumstances do not exist which would entitle plaintiffs to collect the $10.00 per acre bonus on the Flavis Greer lease tract, taken under lease dated January 21, 1961, for the same reasons we have held that plaintiffs are not entitled to recover a judgment which imposes or declares in effect, as to said premises, their right to an "overriding royalty" interest. In either event in order for plaintiffs to show a right to recover it would be requisite that plaintiffs have fact issues submitted to the jury, with favorable findings thereto returned establishing the rights for which they contend. As to the question of right to bonus it was essential to establish factually that the new Flavis Greer lease was "in renewal and/or extension" of the Jeff P. Taylor lease. Such issues were not submitted and no complaint is presented to us of refusal of any special issue bearing thereupon. Hence right to recover is waived, for as previously stated the undisputed facts fail to show a state of affairs under and by reason of which plaintiffs might be held to have established their right to recover as a matter of law.

We now believe it proper to consider that which might be treated as a separate cause of action asserted by plaintiffs concerning what is referred to as the two Wilson Leases. The interested defendants have always recognized that such leases fall within the "renewal or extension of primary term" provisions of the October, 1957 amendment (Plaintiffs' Ex. 3) to the November 22,

1955 assignment (Plaintiffs' Ex. 2). There was evidence that the defendants had decided to reassign the original leases to the plaintiffs rather than renew them, renewal entailing paying bonus both to the landowners and the plaintiffs. Under the defendants' theory it was upon the promotion by and at the instigation of the plaintiffs that they, the defendants, did agree to renew the leases. According to their pleaded theory plaintiffs, in inducement, agreed to forego the $10.00 per acre bonus provided by the October, 1957 amendment if defendants would take a renewal which would obligate them, in the event of production, to pay plaintiffs an overriding royalty interest. Under defendants' theory the representative of plaintiffs was oral, but plaintiffs did not plead the Statute of Frauds. Furthermore, under the evidence which was admitted, over objection, there was a written memorandum of the event by the authorized agent of the defendants who entered into the agreement. It read, "Mr. Gasperson is to attempt to renew leases #14038—Tom J. Wilson and #14039—D. J. Wilson for $15 per acre with no other consideration to Gasperson and Pistocco other than to carry them for their override as set forth in the original assignment." The memorandum was admitted into evidence as proven to have been made in the regular course of business. Vernon's Ann. Tex.St., Art. 3737e, "Memorandum or record of act, event or condition; absence of memorandum or record as evidence."

■ In answer to a jury issue, submitted with burden cast upon the defendants, the jury returned its finding that the agreement was so made. Gasperson did, for himself and Pistocco, obtain the renewal of said leases. They thereafter expired without production. The only question with reference to them is plaintiffs' right to recover the $10.00 per acre bonus for obtaining the renewal leases.

■ Plaintiffs' theory is that the agreement claimed by the defendants was without consideration, but we are of the opin-

ion that the consideration was the defendants' agreement to renew upon consideration—as applied to plaintiffs—that they would waive right to bonus payment in the event renewals were obtained. Since the evidence showed that only a day or two earlier the agreement had been made for such renewals with plaintiffs to receive the bonus as well as the right to "overriding royalty" plaintiffs claim that the jury finding was against the great weight and preponderance of the evidence. We are of the opinion that there was evidence, and that the finding was not against the great preponderance of the evidence. Relative to their contention that the memorandum was inadmissible as hearsay and self-serving despite Art. 3737e, plaintiffs cite Taylor-Link Oil Co. v. Anderson, 92 S.W.2d 499 (Austin Civ.App., 1936, writ dism.). The decision cited considered Art. 3737 as then in effect. Article 3737e, which liberalized the rules of admissibility of evidence of the character under consideration, was later enacted. We hold that under Article 3737e it was within the discretion of the trial court to admit the memorandum, and that as so admitted it constituted competent evidence.

The remainder of plaintiffs' points of error have relation to evidence upon which the trial court ruled in a way which is contended to have been erroneous and as to which exception was taken.

■ In the beginning of the discussion in plaintiffs' brief they recognize the fact that theirs is the obligation to show as to one or more of the events of which complaint is made that prejudice to them was sufficiently probable to constitute reversible error under the provisions of T.R.C.P. 434, "If Judgment Reversed". Under decisions predicated upon the rule it is established that the denial of evidence contended to have been admissible or the admission of evidence of the opposite party contended to have been inadmissible must be such as was reasonably calculated to cause and probably did cause the jury to return a verdict contrary to that which it would have returned but for the error complained of.

Except for the answer to Special Issue No. 16, by which the jury found for the defendants in relation to the agreement to waive the $10.00 bonus provision if the defendants would renew the Wilson leases and therein provide for plaintiffs' "overriding royalty" interest, it is obvious that the jury was for the plaintiffs and against the defendants. This is demonstrated by jury findings returned to Special Issues Nos. 9 to 15, inclusive, which we outlined at an earlier stage of the opinion. This opinion has become somewhat extended, and it is our opinion and belief that the circumstances of the entire record is such that the events complained about, assuming they actually constituted error, were not such as caused the jury to return a verdict which it would not have returned had they not occurred.

Therefore, we hold that even when assumed to constitute error the errors were not such as should occasion a reversal in view of the provisions of T.R.C.P. 434.

The judgment is affirmed.