## MISSOURI PACIFIC RAILROAD COMPANY, Appellant,

v.

## Elenor G. THOMAS et al., Appellees.

### No. 8169.

Court of Civil Appeals of Texas, Beaumont.

March 8, 1979.

Motion for Rehearing Overruled March 29, 1979.

C. S. Pipkin, John G. Bissell, Beaumont, for appellant.

Alto V. Watson, Kaye Sexton, Beaumont, for appellees.

DIES, Chief Justice.

On the night of November 25, 1975, Mary Ann Leger was driving on FM 1006 in Orange County, Texas. In the car as her passenger was her sister, Helen Thomas. Near the DuPont plant, two tracks of the Missouri Pacific Railroad Company (Railroad) cross this road. A train was occupying one of these crossings slowly backing south into the DuPont plant when the car driven by Mary Ann Leger drove into and under a tank car of the train, killing both ladies.

Plaintiffs, Elenor G. Thomas, the surviving mother of decedents; and David Leger, Charles Leger, and Paula Davis Bowsher, the surviving children of the deceased driver, Mary Ann Leger, brought a wrongful death action against the Railroad, defendant below. Trial was to a jury which found the Railroad 55 percent negligent and Mary Ann Leger 45 percent negligent. A judgment was given plaintiffs for $65,675 from which Railroad brings this appeal.

Railroad urges that the jury's finding, that the conditions surrounding the crossing in question were such as to render the crossing more than ordinarily dangerous as a nighttime crossing, is supported by no or insufficient evidence or is against the great weight and preponderance of the evidence.

In passing on the no evidence point, we consider only the evidence and inferences therefrom which tend to support the verdict and disregard all evidence and inferences to the contrary, *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). A contention that the evidence is insufficient or against the great weight and preponderance of the

evidence directs us to all the evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

When the resident engineer of the Texas Highway Department was on the stand he was asked by the Railroad's attorney:

"Q. Tell me what conclusions the Highway Department reached concerning accidents and whether or not motorists were heeding the red light signal that lead [sic] it to believe that these lights were necessary over the crossing? *

"A. As to why the recommendation for the lights was made?

"Q. Uh-huh.

"A. Well, I have a cover letter that I would like to read that would stand justifying that, if you would like.

"Q. Okay.

"A. . . . It says, 'An analysis of accidents that occurred'—this was dated January 7, 1976. 'An analysis of accidents that occurred at the caption railroad crossing has been conducted and we feel that the severity of these accidents indicates the need for additional safety improvement. There are two crossings within 375 feet of each other and four accidents have been recorded in the period from 12–15–72 to 12–15–75. Two of these accidents were at night and involved three fatalities. The accident records are not specific in the showing which crossing each accident occurred, but this is of no consequence as the proximity of the crossings allows the location to be treated as a single crossing. Existing protecting devices consist of overhead flashing lights and warning bell at each crossing. The installation of flashing advance warning signs in accordance with the DHPT standard AWSRR 75, interconnected to allow activation by rail traffic on either crossing is pro-

posed. In addition, due to the 50% nighttime accident occurrences, we propose to install safety lighting consisting of four, 400 watt mercury vapor illuminators, each mounted on forty foot wood poles.

'Wood poles can be safely used in this instance by locating illuminator assembly behind exiting metal beam guard fence rail . . . .'

"Q. I don't know that that letter actually sheds much light on why they reached that conclusion, although it particularly sets it out . . . isn't it true that the reason this became necessary is because some motorists, apparently few in number, with four accidents over a rather extended period of time, don't heed the red flashing light warning?

"A. Well, I think because we had the number of accidents we did, we felt that something else should be put up there in order to better illuminate the situation . . . make it where it could be seen better."

He also was asked by Railroad counsel, "Have you had any accidents at this crossing, that you are aware of, since these lights were put in?" To which he responded: "Not to my knowledge."

■ This document shows prior accidents at the DuPont crossing, which is evidence to support a finding of extra hazardous crossing. In *Missouri Pacific Railroad Company v. Cooper,* 563 S.W.2d 233 (Tex.1978), the court held that witnesses testifying as to previous crossing accidents were not qualified because of lack of knowledge of similarity. Since the witnesses had shown no knowledge of similarity in their testimony, the case was rendered, implying that if this could have been "corrected," the case would have been remanded on the issue of extra hazardous crossing. (*Id.* 238). See also *Karr v. Panhandle & Santa Fe Ry. Co.,* 153 Tex. 25, 262 S.W.2d 925, 932 (1953). "It is noteworthy that there was no testimony

---

* Plaintiffs' had already shown without objection that following this accident the Highway Department had installed lights over the crossing as well as lights in front to warn motorists they were approaching a crossing.

whatever that anybody had suffered any accident or near-accident at the crossing under similar conditions prior to the night in question, as there was in the *Long* case, supra."

And in *Missouri K. & T. RR. Co. v. Long,* 23 S.W.2d 401, 402 (Tex.Civ.App.—Austin 1929, writ ref'd), the court held that evidence of prior accidents or near accidents was proper "[i]n determining whether the crossing was unusually dangerous or hazardous as a nighttime crossing at the time of the accident" and "[i]n determining whether appellant [Railroad] knew, or in the exercise of ordinary care should have known, of the alleged unusually dangerous or hazardous conditions surrounding the crossing at the time of the accident."

We hold that the evidence produced by the Railroad of the prior accidents together with the unobjected to testimony of the highway engineer was sufficient evidence to support the jury finding challenged and thus overrule these points.

Some eight witnesses testified concerning prior accidents at this crossing. Appellant Railroad urges that the proper predicate was not laid for this testimony. *Cooper,* supra at 236 says:

"The plaintiffs' were required to show that the earlier accidents occurred under reasonably similar but not necessarily identical circumstances."

Undoubtedly some of these points would be good had not the Railroad itself put in evidence earlier the document set out above, which contains the same prior accidents the witnesses allude to.

In Tex.Jur.2d *Evidence* § 208 (1961) we find:

". . . a party is ordinarily estopped to complain of evidence presented by his adversary if he himself has previously introduced either the same evidence or evidence of a similar character."

See *Blakney v. Panhandle & Santa Fe Ry. Co.,* 381 S.W.2d 143 (Tex.Civ.App.—El Paso 1964, writ ref'd n. r. e.), where appellant tried to complain of testimony of appellee's witnesses where testimony of appellant's

witness and introduction of diagram by appellant were substantially the same. These points are overruled.

■ Even though plaintiff's evidence of the subsequent lights installed by the highway department went in evidence without objection and despite the fact the same evidence, as well as the prior collisions, was put in evidence by the Railroad in the highway document set out above, we yet must determine if this evidence is hearsay, for hearsay evidence cannot support a judgment. *Texas Co. v. Lee,* 138 Tex. 167, 157 S.W.2d 628 (1941); *Hughes v. State,* 508 S.W.2d 167 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.); *Gulf St. Pipeline v. Orange County Water Control & Improvement Dist. No. 1,* 526 S.W.2d 724 (Tex.Civ. App.—Beaumont 1975, writ ref'd n. r. e.).

*Tex.Rev.Civ.Stat.Ann. art. 3737e* (Vernon Supp.1978) in part reads:

"Sect. 2. The identity and mode of preparation of the memorandum or record in accordance with the provisions of paragraph one (1) may be proved by the testimony of the entrant, custodian or other qualified witness even though he may not have personal knowledge as to the various items or contents of such memorandum or record. *Such lack of personal knowledge may be shown to affect the weight and credibility of the memorandum or record but shall not affect its admissibility.*" (Emphasis supplied).

2 C. McCormick & R. Ray, Texas Law of Evidence § 1258 at 127–128 (Texas Practice 2d ed. 1956):

"It is not necessary that the authenticating witness be the maker of the record. He need not have personal knowledge that the record corresponds to the event. . . . . Indeed, a witness should be allowed to testify to the 'identity and mode of preparation' of the record without ever having read it."

See *Stillman v. United States,* 177 F.2d 607, 618 (9th Cir. 1949); 2 C. McCormick & R. Ray, Texas Law of Evidence § 1261 (Texas Practice 2d ed. 1956), ". . . the record of *any sort* of 'act, event or condition' may

qualify for admission." The United States Department of Agriculture, Soil Conservation Service is "business" within the meaning of this article. *Kaufman Northwest, Inc. v. Bi-Stone Fuel Co.,* 529 S.W.2d 281 (Tex.Civ.App.—Tyler 1975, writ ref'd n. r. e.).

■ Bond, the Orange resident engineer, testified he had custody of the records covering the Orange County area; that the traffic department actually conducted the investigation of the crossing, but he (Bond) "discussed it with our traffic engineer." He was asked by the Railroad's attorney, "Do your records reflect that all of that was done?" To which he responded, "Correct." He also testified he was personally acquainted with the crossing involved. See *Gasperson v. Christie, Mitchell & Mitchell Company,* 418 S.W.2d 345, 358 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n. r. e.), holding admissible a memorandum by an authorized agent of defendants to the effect that one of the plaintiffs was to attempt to renew certain oil and gas leases without any consideration to plaintiffs other than to carry them for their override.

As stated above, this information was introduced by the Railroad. The case of *Mew v. J. & C. Galleries, Inc.,* 554 S.W.2d 249 (Tex.Civ.App.—Dallas, 1977), writ ref'd n. r. e. per curiam, Tex., 564 S.W.2d 377 (1978), is particularly in point. There insured stated he had no objection to the admission of certain exhibits consisting of computer printouts of stolen property, then later contended they were hearsay based on asserted failure of plaintiff to show that the printouts satisfied the prerequisites of *Tex.Rev.Civ.Stat.Ann. art. 3737e* (Vernon Supp.1978). The court said:

"We conclude that defendants have waived any complaint based on lack of the predicate required by *Article 3737e.* To allow defendant's counsel to state specifically that he has no objection to the admission of these exhibits and then later *complain of plaintiff's failure to lay a proper predicate* would permit a party to benefit from error for which his counsel is, in part, responsible due to his affirma-

tive acts. Cf. *Cherry v. State,* 546 S.W.2d 922, 923 (Tex.Civ.App.—Dallas 1977, writ ref.) (a party cannot complain of responsive answers to a question which he propounds). Counsel's statement that he had no objection to the admissions of the exhibits is, in effect, an agreement that the proper predicate need not be presented. *Loper v. Andrews,* 395 S.W.2d 873, 875 (Tex.Civ.App.—Waco 1965), *aff'd on other grounds,* 404 S.W.2d 300 (Tex.1966); *Missouri Pacific Railroad v. Watson,* 346 S.W.2d 640, 641 (Tex.Civ.App.—San Antonio 1961, writ ref'd n. r. e.) (per Pope, J.); see *Buchanan v. American Nat'l Ins. Co.,* 446 S.W.2d 384, 387 (Tex.Civ.App.—El Paso 1969, writ ref'd n. r. e.). . . . To hold otherwise would lull the proponent of the exhibits into believing that no further predicate was necessary even though he could lay predicate in compliance with this statute." (554 S.W.2d 251).

See *Cherry v. State,* 546 S.W.2d 922, 923 (Tex.Civ.App.—Dallas 1977, writ ref'd):

". . . appellant cannot complain of responsive answers to questions which he asked the witness on cross-examination. *Pullman Co. v. Vanderhoeven,* 48 Tex.Civ. App. 414, 107 S.W. 147, 150 (1908, writ ref'd). A party is not permitted to ask questions, and then upon receiving responsive answers unfavorable to his cause, have the answers stricken from the record."

See also, *Colburn v. State,* 501 S.W.2d 680, 681 (Tex.Cr.App.1973):

"The condition of probation required the appellant to report to the probation officer monthly. The probation officer, while testifying concerning the appellant's failure to report, used an index card on which had been recorded the dates the appellant had reported. The card was sectioned off to indicate a space for each month of the year. He testified that when the appellant failed to report no notation was made on the appropriate section of the card. This record indicated that the appellant had failed to report a

number of times. The appellant's chief complaint is that a proper predicate was not laid for the admission of the card as a business record under the provisions of Article 3737e Vernon's Ann.Civ.St. We need not determine this matter as the record reflects the appellant's counsel offered the card in evidence. *He may not complain of the admission of evidence which he himself offered."* (Emphasis supplied).

Also see *Loper v. Andrews,* 404 S.W.2d 300, 303 (Tex.1966):

"It is settled . . . that the statute [*Art. 3737e*] creates an exception to the hearsay rule deemed justified notwithstanding the deprivation of the right of cross-examination."

There is competent evidence of other collisions under similar conditions other than the Highway Department document. The conductor of the train had knowledge of two prior accidents and was an eye-witness to a nighttime accident occurring ten days before this accident. Witness Howard investigated the signals at this crossing after two accidents, and there is some testimony that light from the DuPont plant caused confusion. See *Texas & N. O. R. Co. v. Davis,* 210 S.W.2d 195, 205 (Tex.Civ.App.— Beaumont 1948, writ ref'd n. r. e.). All of appellant's points are overruled. The judgment of the trial court is affirmed.

AFFIRMED.

KEITH, Justice, dissenting.

Although I am not in complete accord with the single holding of the majority— there was no error in the admission of testimony concerning prior accidents at the crossing in question [1]—I do not address that subject in this dissent. But, cf. *State v.*

*Chavers,* 454 S.W.2d 395, 398, syl. 3 (Tex. 1970); and *Skillern & Sons, Inc. v. Rosen,* 359 S.W.2d 298, 305, syl. 9 (Tex.1962). See also *Texas Co. v. Lee,* 138 Tex. 167, 157 S.W.2d 628, 631, syl. 8 (1941); *Aetna Insurance Co. v. Klein,* 160 Tex. 61, 325 S.W.2d 376, 379, syl. 3 (1959).

I am more concerned with the failure of the majority to address or even mention the first twenty-four points of error wherein the railroad contends, in every conceivable combination of presentation form, that the crossing was not an extrahazardous crossing either as a matter of fact or as a matter of law.[2]

There is no controversy whatsoever that the crossing was protected by automatic flashing signals and ringing bells—*which were working at the time of the accident* —and that the plaintiffs' vehicle ran into the side of a moving car which was occupying the crossing at the time. The driver had to ignore completely six brilliant flashing red lights facing her as she approached the crossing; she also had to ignore the ringing of the bells upon the poles supporting the signals flashing in her direction. The weather was clear; there was no rain, fog, smoke, or drizzle to obstruct the driver's view of the crossing. The roadway east of the crossing was straight for at least ⅞ ths of a mile and the track crossed the roadway at right angles.

Moreover, some of the lights were up over the pavement, cantilever style, and were focused on the lanes of the highway for a distance of about 3,000 feet. Other flashing lights were on the poles and focused upon the highway so as to shine in an approaching driver's eyes. In short, as the highway engineer testified, the lights were safe when put up by the highway department.

1. Some of the prior accidents were at another and nearby crossing; others were in the daytime while this one was at night; in some, the automobile was going east while this one was going west. In still others, there was a simple and unexplained accident. Cf. *Missouri Pac. R.R. v. Cooper,* 563 S.W.2d 233, 236 (Tex.1978).

2. While I deplore the present practice—perhaps required by our present rules—of a proliferation of points, the sheer number of such points does not relieve an appellate court of the duty of addressing the subject, at least generally.

Liability of defendant was predicated upon a series of findings which are summarized in the margin.[3] The jury also found that the driver failed to keep a proper lookout, failed to make a timely application of the brakes, drove at an excessive rate of speed, and failed to heed the warning given by the operating electric railroad signal. Each act of negligence on the part of the driver was found to be a proximate cause of the collision.

The record shows that the movement in question began when the entire cut of cars was inside the DuPont plant south of the highway. The engine, coupled to twenty-one cars, pulled north and sixteen of the cars were north of the highway crossing when the engine stopped and began a southward movement. It was at this time that the collision occurred when the automobile ran into one of the cars which had been blocking the crossing for several minutes. There was no contact between the engine or the front of any of the moving cars—the automobile simply ran into the side of the tank car.

I would first note that there was no duty on the part of the railroad to blow the whistle after the engine had crossed the highway. *Texas & N. O. R.R. v. Stratton,* 74 S.W.2d 741, 744 (Tex.Civ.App.—San Antonio 1934, writ ref'd); *Reid v. Texas & N. O. R.R.,* 254 S.W.2d 164, 167 (Tex.Civ.App.—Galveston 1952, writ ref'd n. r. e.); *Woods v. Panhandle & S. F. Ry.,* 315 S.W.2d 953, 955 (Tex.Civ.App.—Amarillo 1958, writ ref'd n. r. e.). *Missouri-K–T R.R. v. Wagner,* 400 S.W.2d 357, 361 (Tex.Civ.App.—Waco 1966, writ ref'd n. r. e.).

It is obvious from what has been written that the railroad had taken adequate precautions to protect the crossing for all but the most heedless and reckless of drivers. Additionally, as was said in *Missouri Pacific Railroad Company v. Cooper,* 563 S.W.2d 233, 234–235 (Tex.1978), "An additional warning of danger to those proceeding toward the railroad crossing was the presence of railroad cars that were already occupying the crossing and directly in front of the driver."

Moreover, even from a cursory examination of the liability findings, it is apparent that the jury accepted the testimony of the highway engineer as to the need for the improvements made *after* the accident. Thus, his testimony contravenes a rule now in its ninetieth year in Texas that "evidence of improvement made in the appliances and mode of operating a railroad after an accident should not be received as evidence of former negligence" since it would discourage improvements. *Missouri Pac. Ry. v. Hennessey,* 75 Tex. 155, 12 S.W. 608, 610 (1889); *2 C. McCormick & R. Ray, Texas Law of Evidence § 1151, at 42 ( 2d Ed. 1956),* and cases therein cited.

Since I find no probative evidence supporting the findings of liability on the part of the railroad, I dissent from an affirmation of the judgment.

---

**3.** (4, 5, 6) The engineer failed to blow the horn on the engine before starting the south movement which was negligence and a proximate cause of the collision; (7 and 7A) that "the conditions surrounding the crossing in question was [sic] such as to render that crossing more than ordinarily dangerous as a nighttime crossing at the time and place in question" and that the defendant knew or should have known that such crossing was more than ordinarily danger-ous as a nighttime crossing; (8) that it was negligence for the Railroad, in addition to the flashing warning lights, not to have one or more of the following precautions taken: (a) an illuminated crossing; (b) an electrical lighted advance warning signal, and (d) flag the crossing with a fusee; and (9) the omissions inquired of in 8(a), (b), and (d) constituted a proximate cause of the collision.