**K. V. BOOTH, Appellant,**

v.

**T. H. WILSON et al., Appellees.**

No. 7218.

Court of Civil Appeals of Texas.

Texarkana.

Sept. 6, 1960.

Rehearing Denied Sept. 27, 1960.

L. F. Burke, Longview, for appellant.

Smith, Porter & Caston, Marcus Vascocu, Longview, for appellees.

CHADICK, Chief Justice.

This is a suit to impress a trust upon and recover an interest in the leasehold estate created by an oil, gas and mineral lease upon certain lands, and for moneys accrued and accruing to the owner of such interests, and dissolution of a partnership, costs, etc. The judgment of the trial court denying the plaintiff K. V. Booth the relief sought is affirmed.

In the spring of 1955 Booth, an experienced broker and trader in oil properties,

and T. H. Wilson, lately a jewelry merchant in Longview, came to an unwritten, and undetailed agreement to work together in acquiring and trading in oil, gas, and mineral leases and associated interests in land. The relationship between them was limited in scope, and its duration not agreed upon. It is not claimed that anything more than a joint venture was projected with respect to certain tracts of land, including the land here in suit. A general trading partnership was not contemplated. Rather a series of separate enterprises were undertaken. As an illustration, the "Ogle" lease was obtained, disposition made thereof with Booth and Wilson each taking an equal share of a retained interest, and the books closed upon that deal. Likewise, the "Killian" lease was obtained, a trade for development made thereon, with the joint adventurers each taking an equal share of the profit, and as between the adventurers the deal closed. There is a suggestion of record that there may have been other transactions of similar character handled in like manner. There is no suggestion that the several ventures were a part of a general partnership plan, and that the proceeds from any venture were held by either of the parties for the benefit of a partnership; rather it is conclusive that after each lease deal the enterprise was considered closed and the fruits distributed.

In 1955 while working on the Killian venture the parties learned that an adjoining tract, which is the land involved in this lawsuit, might be leased for mineral development, but it appears no effort to secure it was made until the Killian deal was closed. In May, 1958, the parties negotiated an agreement with R. E. Gilbert and wife for a mineral lease upon this 260 acre tract lying in Clay and Montague Counties. The lease instrument was prepared but not delivered to them. It was to be delivered and the consideration therefor paid when title examination was completed. G. E. Penn, the person to whom the parties had turned the Killian lease, had expressed an interest in the Gilbert lease, and the joint adventurers went to him and made an informal unwritten agreement which required Penn to pay the consideration due the Gilberts and to carry the adventurers for an interest in any oil and gas production from the lease.

In the course of the title examination it developed that Gilbert had title to only one-half of the minerals, together with certain powers to lease the remainder. This discovery brought about a considerable delay because Mr. Penn declined to pay the lease consideration until the title problems were satisfactorily cleared. At this point it suffices to say that the joint adventurers, that is, K. V. Booth and T. H. Wilson, did not complete this original lease transaction with Gilbert and wife, and the lease instrument prepared in connection with it was returned to and destroyed by Gilbert.

Subsequently on June 15, 1958, T. H. Wilson and Cline Rector took in their names a mineral lease of the land from the Gilberts. The consideration of $4,200.00 therefor was paid by F. B. Wilson and Noel E. Fielder and wife, Jeanette Fielder, a brother, brother-in-law and sister of T. H. Wilson. Booth was denied any interest or share in the Gilbert lease by T. H. Wilson and Rector, or in the retained interest derived from a deal subsequently made on the lease with Dr. Seth Downs.

In September, 1958, Booth filed this suit against T. H. Wilson and Cline Rector, later amending and making as additional parties F. B. Wilson and T. H. Wilson's minor children, Betty Sue and Pamela Ann, and their guardian, Miss Eunice Hust. All defendants answered, and F. B. Wilson, Noel E. Fielder and Jeanette Fielder filed an intervention petition naming Booth, T. H. Wilson and Rector as defendants. Booth answered the intervention petition with special exceptions, a general denial, special defenses, and a cross action.

A detailed recital of the judgment entered does not appear necessary to an understanding of the case. However, it may be noticed that a take nothing judgment was entered as to Booth on the jury's answer to

Special Issues, and in accordance with a directed verdict at the completion of the testimony judgment was entered for the intervenors for the interest claimed by them against Booth, T. H. Wilson and Cline Rector from which T. H. Wilson and Cline Rector have not appealed.

The crux of the appeal lies in whether or not the evidence is sufficient to support the jury's answer to Special Issue No. 2. That issue read: "Do you find from a preponderance of the evidence that Plaintiff K. V. Booth had abandoned or terminated the joint venture, if any, by his acts and conduct prior to the time the Gilbert Lease was acquired by T. H. Wilson and Cline Rector? Answer 'He Had', or 'He had not'". The jury answered "He had." The effect of the evidence must be examined.

R. E. Gilbert as a witness testified that in the early spring of 1958 he executed an oil, gas and mineral lease to G. E. Penn following negotiations to that end with K. V. Booth. The written lease was left with the lawyer drafting it with the understanding that Mrs. Gilbert would execute the lease when Mr. Booth returned in a couple of weeks to pay the $2,600.00 consideration. Booth did not return in the time specified. Following is an extract from Gilbert's testimony:

"A. No. And it rocked along, I ain't a-going to say how long but five or—four or five weeks, and Mr. Booth drove up to the house one day, and got out of the car and come walking up to the house with his hands stuck up and says, 'Now, get your gun and shoot me, do anything you want to. I won't blame you.' I told him, I said, 'Come on in the house, now, there ain't nobody going to hurt you.' He come on in and says, 'Now, somebody's been a goat and I guess it just as well be me as anybody.' He says, 'I come out there and took that lease in good faith,' and says, 'Mr. Penn told me to come get it and I did,' and says, 'I told him he

was supposed to pay that lease in two weeks,' and says, 'I talked to him about it and he just puts me off,' says, 'I ain't a-going to pay for it', says, 'I can't.' And says, 'I'd advise you to go to Jacksboro and get your lease', and I says, 'Well, I've been thinking about it.' He says, 'Or I'll bring it to you in the morning.' I says, 'No, I'll go get the lease', and I said, 'Now, somebody's going to owe Judge McClure something for writing it.' I said, 'I don't feel like its me'. He says, 'I'll pay Judge McClure.' And I went down there the next morning, and when I went in Judge McClure said, 'I guess you want your lease?' Said, 'I don't blame you, I would, too.' And I asked Judge McClure if Mr. Booth paid him, and he said, 'Yeah, Mr. Booth paid me for my work.'

"Q. All right, was there any other conversation there when he came out and told you this, Mr. Gilbert? A. Well, I asked him about Mr. Wilson. Him and Mr. Wilson had been together the first time I ever saw him. I said 'What about the younger man that was with you when I saw you down in town that day?' And he says, 'You mean Hurst Wilson?' He says, 'Well, I'll tell you, he can't do nothing. Can't buy no lease. He'll do a lot of talking and try to make you believe that he can, but he can't.' He says, 'Now, you take the lease and do whatever you can with it. I'm through with it.'

"Q. Said what? A. Said, 'I'm through with it.' He said, 'I'm fixing to take a vacation,' but he says, 'I will advise you this. If you sold it to anybody from Longview, I'd get the money.' He said, 'That Magnolia Building is loaded with crooks and liars down there and I'd get the money when I sold the lease next time.'"

Gilbert's testimony, if believed by the jury, supports a conclusion that Booth, as a joint adventurer with T. H. Wilson, sur-

rendered all legal and moral right that the joint adventurers, or he individually, had to insist upon Gilbert conveying the leasehold estate in his 260 acres. Booth authorized Gilbert to revoke the executory contract for the lease and delivery of the instrument evidencing it. At the same time he advised Gilbert that his associate in the enterprise, T. H. Wilson, did not have the money to pay the consideration for the lease, and told Gilbert he was through trying to deal for the lease and to make the best deal he could with it. Booth made it as clear as ordinary language permitted that he individually and his co-adventurer would not make further efforts to purchase the lease.

This action by Booth is subject to be regarded from several aspects. In one sense failure to obtain the lease completed the purpose of the enterprise. In another, advising Gilbert to sell the lease to others could be regarded as an abandonment or withdrawal from the enterprise. While releasing Gilbert from any obligation to complete the conveyance was in effect disposing of the only assets of the joint adventure.

There is a paucity of cases by Texas courts dealing with abandonment of a joint adventure by one of the parties as constituting a dissolution of the relationship. No Texas case directly in point has come to the attention of the court. In the treatises on partnership in 68 C.J.S. Partnership § 345, page 851 it is said:

"Abandonment of the partnership enterprise effectuates a dissolution of the firm, and may be implied from the conduct of the parties. * * * Where the partnership is one at will, an abandonment by one partner of the partnership enterprise effects a dissolution of the firm."

First Nat. Bank of Amarillo v. Rush, Tex. Com.App., 210 S.W. 521, is authority for the views that a joint adventure in its executory stages may be abandoned by one of the parties and thus effect a dissolution of the relationship as between the parties, and holds that whether the adventure was abandoned is a fact which may be proven by the conduct of the parties. See also Ebberts v. McLean, Tex.Civ.App., 68 S.W. 2d 1077, judgment sustained on other grounds 128 Tex. 573, 98 S.W.2d 352; Pawley v. Glasscock, 236 Ky. 821, 34 S.W.2d 729. There is much respected authority that a termination of the partnership relation between the parties results at the completion of the enterprise for which it was formed, or by withdrawal of a partner from the enterprise, or the disposal of the firm's entire property. See title Partnership in 32 Tex.Juris. Sec. 168, p. 487; in 68 C.J.S. §§ 334 and 343, and in 20 R.C.L. Sec. 177, p. 953. The evidence supports the jury's finding that as between the parties Booth's acts and conduct terminated his joint adventure relationship with Wilson in their mutual agreement to secure and deal with the Gilbert lease, and that T. H. Wilson, by his acts and conduct accepted and acknowledged the termination and dissolution of the relationship existing between them in that respect.

■ In connection with the foregoing it should be observed that a joint adventure is a species of partnership, and a legal concept of comparatively modern origin. Generally it is a partnership of a limited nature by two or more persons to jointly prosecute a particular transaction for mutual benefit or profit. See Joint Adventures, 25 Tex. Juris. Sec. 2, p. 159. The joint adventurer relation is subject to dissolution and termination upon the same basis as a conventional partnership. See Thompson v. Duncan, Tex.Com.App., 44 S.W.2d 904. The discussion of joint adventurers and partners in this opinion is limited to the rights between themselves of parties to the relationship.

In view of the conclusions that the jury finding that the joint adventure relationship had been dissolved is sufficiently supported by evidence, the appellant Booth's contention can not be sustained that as a matter of law an undissolved joint adventure relationship existed between him and T. H. Wilson with respect to the Gilbert

lease at the time Wilson and Rector took title thereto, and he is entitled to share in the proceeds derived from it. The disposition of the question discussed controls decision on most of appellant's other points. However, each of the points of error briefed have been carefully examined and reversible error is not shown and they are respectfully overruled.

The judgment of the trial court is affirmed.