Gordon **BURKETT**, Plaintiff in Error,

v.

W. F. **SNAKARD** and Frankfort Oil Company, a Division of Carstairs Bros. Distilling Co., Inc., Defendants in Error.

No. 37238.

Supreme Court of Oklahoma.

June 13, 1961.

Rehearing Denied Oct. 31, 1961.

F. C. Swindell, Tulsa, for plaintiff in error.

P. D. Erwin, Chandler, for defendant in error.

JACKSON, Justice.

Parties are referred to as in the trial court, or by name.

Plaintiff Gordon Burkett sued defendants W. F. Snakard and the Frankfort Oil Company in an action to establish a joint venture and for an accounting. Frankfort Oil Company occupied the position of a stakeholder and is not otherwise concerned in this appeal.

Burkett alleged in his petition, as amended, that he and defendant Snakard entered into a joint venture agreement in June of 1954, said venture having for its purpose the acquisition of oil and gas leases with a view towards development or sale of the same. The leases were to be on lands in sections 2 and 3, Township 14 North, Range 2 East, and in sections 35 and 36 in Township 15 North, Range 2 East, all in Lincoln County, Oklahoma. He further alleged that any profits from this venture were to be divided equally between him and Snakard; that pursuant to the agreement, some leases were acquired; that said leases had been converted by defendant Snakard to his own use and benefit; that he had demanded an accounting of Snakard and had been refused; and prayed for an accounting from Snakard as to any profits from the venture, and that one-half of the profits, and a one-half interest in the remaining leases, be set over to him.

In an amendment to the petition, plaintiff alleged that Snakard had entered into a contract with Frankfort Oil Company for the development of the leases, and made the oil company a party defendant; he repeated his prayer for relief and also asked for an accounting from the oil company.

Defendant Snakard filed an answer which in effect admitted that some sort of joint venture had been entered into by Burkett and Snakard, but upon different terms from those set out in plaintiff's petition; it further alleged that plaintiff later voluntarily

repudiated and abandoned the project, and that a settlement had been made with him.

Plaintiff's reply was in the nature of a general denial.

At the conclusion of the trial, the court found that a joint venture had been entered into, that it had thereafter been abandoned by plaintiff, that a settlement had been made between the parties for a nominal sum, and rendered judgment for defendant.

Plaintiff appeals and here argues three propositions. The principal one is that the judgment of the trial court is not supported by the weight of the evidence.

Since the parties hereto agree that a joint venture agreement had in fact existed, the decisive issue in this case is whether or not the venture had been abandoned by plaintiff Burkett.

On that point, three witnesses testified for defendant. S. F. Christian, one of the lessors concerned, testified as follows:

"A. Well, I just asked him how he was getting along in block and he said 'Well, *I don't know much about it*, I've got some stuff down in Craig County' —is that the county Bartlesville is in? Somewheres off down there—he said 'Some shallow stuff'—he says '*I had to get loose from that* and get out where I could make some money." (Emphasis supplied.)

On cross-examination, Mr. Christian said:

"A. Well, he just talked like *he had quit that deal out there*—was my impression, *that he was out*." (Emphasis supplied.)

Ronald Holcomb testified as follows:

"A. Burkett and I went into the office there at Wellston, and Mr. Snakard and my mother were present, and after we had come in, Mr. Burkett threw his packet, his take-off, on the Shawnee area, on the desk and told Mr. Snakard, my mother and myself that *he was through* and couldn't afford to go on the *deal anymore,* that he was *washing his hands of it.*" (Emphasis supplied.)

Hazel Holcomb testified concerning the same incident:

"A. Well, they came in the house and they were hot and they were wiping their brow, and Mr. Burkett had his notebook and papers and stuff and *he said he was through*, that he *wasn't going to work anymore*, and he threw his notebook and his papers on the table and said, '*I'm finished with this deal, I'm quitting as of now*'." (Emphasis supplied.)

Defendant Snakard testified regarding the same incident as follows:

"Q. Do you remember an occasion when Ronald Holcomb and Gordon Burkett went to Shawnee to see about some leases down there, along in July? A. I do, very well.

"Q. About what time in July was this? A. Well, it was the 26th of July.

"Q. 1954? A. Correct.

\* \* \* \* \* \*

"A. \* \* \* They were supposed to leave for Shawnee early—he (Holcomb) went and got him (Burkett) out of bed and took him down there and they left my house about noon, and I didn't expect to see them until 8:00 o'clock or 9:00 o'clock in the evening and in the very early evening, I would say not after 3:30 or 4:00 o'clock, Gordon came into my office—he was ahead of Ronald. They came in—he had a notebook and he took it and flipped it like that (indicating)—and he said, '*I'm finished with the deal*', without any explanation whatsoever. (Emphasis supplied.)

\* \* \* \* \* \*

"A. He did nothing whatsoever on the North Wellston field after that— after the 26th of July, 1954."

Plaintiff argues under this proposition that the withdrawal of Burkett from the project (if he did withdraw) was brought about by the deliberate conduct of Snakard, and Burkett, being without fault, did not forfeit his right to a share of the profits and an accounting. A rule tending to sup-

port this contention is quoted from Kasishke v. Backer, 10 Cir., 146 F.2d 113. But plaintiff did not point out the conduct of Snakard which he contends forced Burkett to withdraw from the venture, and after a careful examination of the evidence we are unable to find any. Plaintiff mentions a certain oil and gas lease dated July 1, 1954, (prior to Burkett's withdrawal) as evidence of bad faith on Snakard's part, but the lease concerned shows on its face that it was acknowledged by lessors on July 30th (after Burkett's withdrawal). Plaintiff also mentions the contract between Snakard and the Frankfort Oil Company as further evidence of bad faith. But this contract was not executed until October 12, 1954, over two months after Burkett's withdrawal, and Snakard therefore owed no duty of disclosure to Burkett.

Another argument under this proposition is to the effect that it was incumbent upon defendant Snakard to give notice to Burkett that he was terminating the relationship of co-adventurer, citing from Dike v. Martin, 85 Okl. 103, 204 P. 1106, 1109, as follows:

"If either party to a joint adventure has refused to substantially perform his obligations, his associates may terminate their relations with him, and carry out the enterprise to his exclusion; and if for this, or any other valid reason, they choose to terminate the relationship, they could do so only by giving notice to him that the relationship was then and there ended."

■ This rule is not applicable here for the reason that the weight of the evidence indicates that it was plaintiff Burkett who terminated the joint adventure, and not Snakard, and the trial court so found.

Also argued under this proposition is that "money advanced by one joint adventurer is held to be a loan to the joint adventurer". Plaintiff apparently refers to testimony of defendant Snakard to the general effect that he had expended over $11,000, in connection with the acquisition of the leases concerned. If by stating this general rule of law plaintiff means to contend that one-half of the money advanced by Snakard was really a loan to Burkett, the argument is of no assistance to plaintiff's case: On the contrary, it makes more reasonable the evidence of a settlement between Burkett and Snakard for a purely nominal sum, made after Burkett's abandonment of the joint venture. Plaintiff also points out that the $11,000, does not take into account any amounts received by Snakard under the contract of October 12, 1954, with Frankfort Oil Company. However, as noted above, this contract was executed quite some time after Burkett's withdrawal from the venture, and payments made under it are therefore immaterial.

■ Plaintiff's second proposition is that the court erred in refusing to admit competent evidence on the part of plaintiff. The evidence concerned was a letter from defendant Snakard to plaintiff Burkett in which Snakard disclaimed any interest in certain parts of Section 4, Township 14 North, Range 2 East, Lincoln County, Oklahoma. Plaintiff contends the letter was admissible for the purpose of impeaching defendant Snakard, who was then testifying on cross-examination. Snakard had been testifying with regard to the Armstrong lease on parts of section 4, supra, and had testified as follows:

"Q. Didn't they require that you give them a release of any interest in that lease?

"A. Didn't who?

"Q. The purchaser?

"A. They certainly did not."

Plaintiff says the letter would have shown that "the purchaser" did require a release from him, but such is not the case. It merely shows that Snakard did give a disclaimer to Burkett, who was not "the purchaser". It was therefore not admissible for purposes of impeachment.

Plaintiff cites Rice v. Woolery, 38 Okl. 199, 132 P. 817, to the effect that "A letter which tended to contradict the testimony of the writer, and throw some light upon such testimony, held properly admitted." But

here the letter did not "tend to contradict" Snakard's testimony or "throw some light" upon it, and the rule is therefore inapplicable.

We hold that the trial court did not err in refusing to admit this evidence.

Plaintiff's remaining proposition is that the court erred in admitting incompetent evidence on the part of defendant.

The evidence concerned consisted of some letters written to a witness for plaintiff, Rosa Sapp, and were offered in evidence by defendant during the course of cross-examination of Mrs. Sapp. They were from persons not witnesses in this case and not parties to it. Defendant's purpose in introducing them in evidence is not clear, but it was apparently done for the purpose of impeaching the witness, or for the purpose of discrediting the character of the plaintiff.

■ The letters were plainly hearsay and as such inadmissible, it not being shown that they were admissible under any exception to the hearsay rule. However, such being the case, plaintiff was subject to the rule stated in West v. Clopine, 200 Okl. 625, 198 P.2d 742, 743, as follows:

> "Before a judgment will be reversed on account of the admission of incompetent evidence, it must affirmatively appear that the admission of such evidence probably resulted prejudicially to the interest of the one making objection thereto."

■ We do not believe plaintiff was prejudiced by the admission of this evidence. As heretofore noted, the decisive issue in this case is whether or not Burkett abandoned the joint venture. Mrs. Sapp's testimony had no bearing upon this issue.

Under this proposition plaintiff cites In re Porter's Estate, 208 Okl. 475, 257 P.2d 517, as a case in which the judgment below was reversed by this court because of the admission of hearsay evidence. However, in that case, the evidence concerned "touched a primary controlling issue in the case", and it was evident from the remarks of the trial judge both during the trial of

the case and in his findings of fact that he gave great weight to the hearsay evidence in question. Such is not the case here, and we therefore hold that plaintiff was not prejudiced by the admission of this evidence.

■ After a careful examination of all the evidence in this case, we cannot say that the judgment of the trial court is clearly against the weight thereof. See Priddy v. Shires, 204 Okl. 664, 233 P.2d 298, to the following effect:

> "The judgment of the trial court in an action of equitable cognizance will not be disturbed on appeal unless clearly against the weight of the evidence."

The judgment of the trial court is affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J. and WELCH, DAVISON, JOHNSON, IRWIN and BERRY, JJ., concur.