A. Dean ALLISON and Victor F. Reiserer, Appellants,

v.

HOME–STAKE PRODUCTION COMPANY, a corporation, and C. W. Staats, Appellees.

No. 8224.

United States Court of Appeals
Tenth Circuit.

June 27, 1966.

Robert Martin, Wichita, Kan. (John R. Blair, Don Matlack, Ronald H. Rogg, Richard V. Foote, George B. Collins, K. W. Pringle, Jr., W. F. Schell, Robert M. Collins, William L. Oliver, Jr., William V. Crank, Tom C. Triplett, Wichita, Kan., Thomas M. Burns, and Peter J. Wall, Denver, Colo., were with him on the brief), for appellants.

Franklin D. Gaines, Augusta, Kan. (Harry L. Fitzgerald, Tulsa, Okl., was with him on the brief), for appellees.

Before LEWIS, BREITENSTEIN and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

After trial without a jury the district court denied relief to the appellants-plaintiffs on their claims that the appellees-defendants had breached, and conspired to breach, certain contract and fiduciary obligations. The trial court found that the duty of the defendants to perform had terminated. The controlling question is the sufficiency of the evidence to sustain such finding.

Plaintiff Allison was in the oil business and plaintiff Reiserer was an oil geologist. Defendant Home-Stake Production Company was engaged in waterflood projects for the secondary recovery of oil. Defendant Staats owned oil leases in an area of Kansas known as the Leon Pool. About the middle of February, 1962, plaintiffs interested Home-Stake in a waterflood project for the Leon Pool. Because of the size of the holdings of Staats his participation was necessary to the success of the plan.

Home-Stake encouraged plaintiffs to make the needed arrangements with Staats, and, on February 19, 1962, gave a letter to Reiserer which, after describing the property, said that "we will treat this property as your property, and any negotiations for the purchase of acreage in this area will be through you." Plaintiffs furnished Home-Stake with maps, logs and other data, some of which they secured from Staats, to enable Home-Stake to evaluate the feasibility of a waterflood project for the area.

Plaintiffs then negotiated with Staats and reported their progress to Home-Stake. When it appeared that the transaction with Staats could be successfully concluded, Home-Stake agreed orally with the plaintiffs that they would receive $20,000 for the delivery of the Staats acreage and an override of $\frac{1}{8}$ on all property in the Leon Pool other than that of Staats which they were able to obtain for the waterflood project. On March 29 Staats told plaintiffs that the deal was off and gave as his reason the fact that he considered Home-Stake a promotional company. Plaintiffs met with a representative of Home-Stake on the next day. They told him that "the deal was off"; that "it was through as far as Home-Stake was concerned"; and that "we are going to try and take it some place else."

Plaintiffs then presented the project to the Murphy Oil Company which rejected it. With the knowledge and acquiescence of Staats they then presented the matter to Kewanee Oil Company but failed to secure an acceptance. In September, 1962, Staats wrote the plaintiffs saying that all relationships between them were terminated and requesting the return of all data which he had furnished them. Plaintiffs then gave back to Staats all the material which they had received from him.

Some months later Home-Stake made a direct approach to Staats with the result that on February 20, 1963, an agreement was consummated for Home-Stake to conduct a waterflood project encompassing the Staats acreage in the Leon Pool.

Plaintiffs learned of this arrangement in April, 1963.

The parties agree that the law of Oklahoma controls because no interest in real property is presented and because all the negotiations and statements occurred in Oklahoma. The plaintiffs say that they engaged in a joint venture with Home-Stake which gave rise to fiduciary obligations and that they are entitled to compensation for the services which they rendered to it. These arguments go for naught if, as the court held, the plaintiffs terminated their transaction with Home-Stake. Plaintiffs rely on Dike v. Martin, 85 Okl. 103, 204 P. 1106, which states that a joint venture may be terminated only on notice. In that case the court held that the defendants had not acted in good faith and could not escape their obligations as joint venturers in a situation where the plaintiffs were willing to participate. Burkett v. Snakard, (Okl.) 365 P.2d 1006, 1009, recognized the Dike v. Martin rule but held it inapplicable because the weight of the evidence was that the plaintiff terminated the venture. The statements sustaining such holding were noticeably similar to the statements made here by the plaintiffs to Home-Stake after Staats rejected the project. In Hardegree v. Zink, (Okl.) 382 P.2d 153, 158, 159, the plaintiff said that he "was through with the lease" and the court ruled that such abandonment of the joint venture deprived him of the right to an accounting.

The trial court held that the transaction between the plaintiffs and Home-Stake was canceled by the plaintiffs. We believe that the statements and conduct of plaintiffs sustain this finding and that under Oklahoma law all arrangements which they might have had with Home-Stake were ended.

So far as Staats is concerned no evidence shows that Staats ever agreed to compensate plaintiffs for any work which they might have done in connection with the Leon Pool. Whatever the situation may have been Staats effectually terminated participation by his September, 1962, letter. The record is devoid of any proof of conspiracy by Home-Stake and Staats to deprive the plaintiffs of anything. From our review of the entire record we conclude that the findings on the crucial issues were not clearly erroneous and that the district court correctly followed the applicable law. See United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.

Affirmed.