Robert H. MARTIN, Appellant,

v.

**PHILLIPS PETROLEUM COMPANY et al.,**
Appellees.

No. 268.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Feb. 11, 1970.

Rehearing Denied March 11, 1970.

Ben H. Schleider, Jr., Earl O. Latimer, II, Houston, for appellant.

Leroy Jeffers, Ross N. Sterling, Houston, for appellees.

BARRON, Justice.

This is an appeal by the plaintiff, Robert H. Martin, from an adverse judgment in

favor of defendants rendered by the District Court of Harris County on December 10, 1968, after that court had withdrawn the case from the jury. Due to the relative complexity of the history of this litigation the facts will be stated in some detail.

In 1960, George H. Jett, an independent oil operator and drilling contractor, obtained an option exerciseable until January 26, 1961, whereby he could acquire a gas producing plant and gas gathering system in eastern Louisiana and Mississippi. This property will be referred to as the Locust Ridge properties. The price of these assets was set at $1,800,000. Jett also owned separate and apart from the Locust Ridge properties certain gas reserves. His goal was to obtain financing for the option, sell the combined assets and retain a net profit interest in the combined assets for himself. Pursuant to this end he began a search for $2,000,000 in financing and a market for his shut-in gas in the area.

An open search for financing continued through the summer of 1960, which included talks with and proposals to several parties. Although Robert H. Martin first heard of the Jett proposal in August, 1960, he showed no interest in it until November, 1960. On November 22, 1960, Martin and two associates received a letter from Anderson, an associate of Jett, setting forth the terms upon which Martin's group would be given an option until January 1, 1961 to purchase the Locust Ridge properties.

In late November, 1960, Martin was in New York on business not relevant to this case. At that time he met Horace Bailey, a vice-president of Chemical Bank New York Trust Company. During the course of a conversation concerning gas properties Martin mentioned that he had an option to purchase the Locust Ridge property. Bailey told Martin that the bank had control of Texas San Juan Corporation as the result of a loan default and that there was still a large tax loss carry-forward available to the bank through Texas San Juan Corporation. Texas San Juan was indebted to the bank. The next week as a result of the possibility of Martin's acquiring financing from the bank to exercise his option with Jett, and the bank using its tax advantage in San Juan, one of Martin's associates, John Weiler, delivered to Bailey reports concerning the Locust Ridge properties. These were the reports supplied by Jett to Martin and were the same ones Jett had shown to other parties who had shown an interest in the Locust Ridge properties.

In Houston, about mid-December, Bailey and Dr. Judson Anderson of the bank, discussed various possibilities of the Locust Ridge properties with Martin, including the possibility of Martin eventually acquiring a 50% interest in the project. It was agreed that more current information concerning the plant, pipe lines and gas reserves would be necessary before the bank could consider a loan of $2,000,000 to Texas San Juan, which was to be the vehicle for acquisition of the Locust Ridge properties. Eddie Ogier, a reservoir engineer and consultant, was asked by Martin to supply more current studies made by Ogier of the Locust Ridge area. Current gas plant and pipe line studies were also obtained by Martin. In order to gain more time for study of the transaction and the acquisition of financing, Martin obtained from Jett on December 30, 1960, an exclusive written suboption on the Locust Ridge properties until January 10, 1961. In return Martin agreed to expand the gas processing plant if Jett was able to supply additional gas reserves. Jett later orally extended this option until January 16, 1961 and still later orally granted a non-exclusive option until January 25, 1961.

In the first week of January, 1961, Martin and Bailey continued to discuss the whole matter. The reports of Ogier and the plant reports were reviewed. The bank was concerned with the necessity of adequate gas reserves, markets for the gas, and an efficient operator of the plant. Martin had never been a plant operator and had had no experience as such. Due

to these considerations the bank hired Burt DeLaat & Associates, Inc. of Houston to make further studies on the properties, which studies were to be furnished by January 16, 1961.

During the week of January 9, 1961, Bailey and Martin continued to discuss the transaction, and Bailey felt that the negotiations were proceeding satisfactorily. Bailey told Martin that his recommendation as to a loan to Texas San Juan would be determined by January 16, 1961. Bailey also stated that Jett's contemplated one-eighth override would have to be subordinated until the loan was repaid and that the DeLaat report must be favorable. During this week Martin continued to negotiate with American National Insurance Company with Bailey's knowledge about American National making the bulk of the loan to San Juan.

On January 12, 1961, Bailey called Frank Stradley of Phillips Petroleum from whom the bank had sought business. The feasibility of the plan that Martin proposed was discussed with Stradley and also with a Phillips vice-president, G. W. McCullough, who was familiar with the Locust Ridge area. Phillips had attempted to buy the facilities in question in 1957 but was refused. Phillips had been offered the plant for $2,000,000 in early 1960 but had rejected the offer because it felt the price was too high at that time. Bailey, realizing that Martin was inexperienced as a plant operator and also realizing that Phillips could provide experienced plant operation and a product market, asked McCullough if Phillips would be interested in participating in the transaction. McCullough said Phillips would consider such participation only if Phillips could operate the plant, receive brokerage fees for the sale of the plant's products and receive 50% residual interest after the loan was paid out. Phillips agreed to participate in a meeting concerning the transaction in Houston on January 16, 1961.

On January 13, 1961, Bailey informed Martin of his talk with Phillips on the 12th. He told Martin that the possibility of reaching an agreement on the bank's proposed loan would be better with Phillips participating. Martin did not want to include Phillips. Martin, without mentioning his action to Bailey, then attempted to get other financing from at least two sources for the transaction without success. On January 16, 1961, the bank met in Houston with plant officials, DeLaat, Phillips and others. After evaluating the entire project with all the information available, including DeLaat's report, the bank informed Martin that a loan from the bank would be feasible only if Phillips were included and if all other parties, including Martin, Jett and the bank, took a smaller interest. It was decided that the bank could offer a revised deal to Martin, with Phillips as operator and marketer of the products, and, due to the inadequate reserves, with everybody, including Texas San Juan, Martin, Jett and the bank, taking a smaller ultimate interest. Later that evening Martin, through Weiler, informed Bailey that he had other financing prospects and that he no longer sought financing or counsel with the bank. Consequently, the bank decided not to make the loan.

The Houston meeting ended with a failure of agreement with Martin. Jett, on January 18, 1961, did ask McCullough if Phillips would be interested in the Locust Ridge properties. McCullough replied that he would check the possibilities with the management. On January 23, 1961, Jett had his own option extended to buy the Locust Ridge properties. In late February, 1961, Phillips informed Jett that it was interested in discussing the matter. On March 9, 1961, Phillips, Jett, Texas San Juan and the bank entered into an agreement similar to the one originally discussed with Martin. During the previous two months Martin had been unable to obtain financing for the arrangement under his terms which would have given him 50% interest in the operation. The record

shows that the Locust Ridge properties were available to Martin through January 25, 1961 and until March 9, 1961 if the money had been forthcoming.

On February 7, 1962, Martin filed this suit against Chemical Bank New York Trust Company, Phillips Petroleum Company, Texas San Juan Oil Corporation, Tensas Gas Gathering Corporation, Gas Industries Management Corporation, Gasoline Plant Construction Corporation, and G. W. McCullough, a vice president of Phillips, all of whom were defendants. The suit also named as defendants Horace C. Bailey and Ben F. Zwick, both of whom were employees of the bank. These two defendants contested jurisdiction and were dismissed. Also the suit as originally filed included as defendants Bart LeLaat and his company, Bart DeLaat & Associates, Inc., as well as George H. Jett. Nonsuit was taken as to these defendants prior to introduction of testimony.

Prior to the above date, on December 29, 1961, Martin filed suit in the United States District Court for the Southern District of Texas at Houston against the same defendants for alleged violation of federal anti-trust statutes, the Sherman and Clayton Acts, 15 U.S.C.A. Sec. 1 et seq. The two petitions include substantially the same basic facts and complaints against these defendants and sought substantially the same damages, the damages sought being trebled in the federal action. The federal suit required some pleading pursuant to a federal anti-trust action which was not necessary in the state common law action. The defendants sought dismissal of the federal suit by reason of the then pending state action. The U. S. District Court, however, refused such motion of defendants and rendered summary judgment on February 12, 1965 in favor of defendants, holding that no violation of anti-trust laws was shown. The decision of the Federal District Court on appeal was affirmed by the U. S. Court of Appeals for the Fifth Circuit. 365 F.2d 629 (5th Cir. 1966), cert. den., 385 U.S. 991, 87 S.Ct. 600, 17 L.Ed.2d

451. Full reference is made to the opinion of the Fifth Circuit for a more complete statement of the facts and findings in the federal action.

In this state court action, Martin sought to have a constructive trust imposed as a result of the transaction outlined above, together with a full accounting, to the extent of 43¾% thereof; title and posession of said 43¾% undivided interest in and to all of said properties, contractual rights, profits and earnings involved; and alternatively that he have judgment against defendants, jointly and severally, for $2,500,000, and $5,000,000 in exemplary damages for alleged willful, intentional, fraudulent and conspiratorial interference with the known agreements and advantageous business relationships of Martin with the bank, Texas San Juan and Jett. Defendants filed pleas in bar, pleas in abatement, special exceptions and motions for summary judgment in the present action on grounds that the doctrine of res judicata and estoppel by judgment were applicable in the state action by reason of the decision and findings in the federal action, which had become final. Such pleas and motions were overruled in this case. As stated above, similar pleas or motions were made in the federal action by defendants on the ground that the federal action should be abated because the alleged actionable wrong was not remediable in an anti-trust treble damage action in federal court and that Martin should be put to his common law tort action in the state court where he could try his alleged action for wrongful interference with contractual or business relationships. The federal trial court, as stated, denied dismissal and granted defendants' motions for summary judgment. In the present case, in a pre-trial hearing, the trial judge in recognition of the possible effect of the prior federal adjudication, stated that there remained to be tried in this case a suit sounding in tort for the alleged wrongful interference with advantageous business relationships between Martin and the bank, Texas San Juan and Jett, and any resulting damages

and injuries therefrom, but the trial court did not require Martin to prove the existence of a valid and enforceable contract as a condition precedent to proving the alleged interference with business relations.

The record in this case is voluminous. The transcript consists of 614 pages, the statement of facts consists of 2,896 pages, and there are many exhibits. Discovery procedure conducted by plaintiff involved approximately 10,000 pages of deposition testimony from more than 30 witnesses in several states. Trial below required approximately five weeks. We have examined this record with as much care as possible and with some difficulty.

The appeal is by Robert H. Martin, plaintiff below, as appellant. Appellees are the bank, Phillips, Texas San Juan and the other defendants named above.

Appellant contends that the trial court erred in withdrawing the case from the jury and rendering judgment favorable to appellees; that there was evidence to establish prima facie a constructive trust upon properties, profits and monies allegedly received by appellees as a result of their alleged wrongful acts; that there was evidence to show a prima facie case for tortious interference by appellees with the contractual and other advantageous business relationships existing between appellant and others, and in entering the pre-trial order limiting the issues to be tried. It is further contended by appellant that the trial court erred in holding that the federal statutory anti-trust action was a bar to Martin's common law tort action in this case and that neither res judicata nor estoppel by judgment were applicable to the present action; in refusing to hold that appellees were estopped by their representation to the Federal Courts that Martin had an adequate remedy for common law interference pending in state courts where he should seek relief, whereby appellees invited and obtained the Federal Court action and findings; in refusing to apply the adverse holdings of the federal action to

appellees; in excluding certain evidence from consideration by the jury, and in depriving appellant of the alleged constitutional right to trial by jury.

In determining whether it was proper for the trial court to withdraw the case from the jury and render judgment, we must, of course, view the evidence in the light most favorable to appellant, the losing party. White v. White, 141 Tex. 328, 172 S.W.2d 295 (Tex.).

We think the controlling fact going to the heart of this case is that Martin called off negotiations for a loan from the bank to Texas San Juan and thereby terminated and abandoned any proposed agreement with the bank. There is no evidence of any oral agreement between Martin and the bank to the effect that the bank would do anything other than decide on January 16, 1961 whether it would finance the transaction. Martin so testified. While negotiations for the loan had been in progress for some time prior to January 16, and some understanding had been tentatively reached concerning the proposed financing, the bank was to advance its money and was not obligated either to make or to refuse the loan. On the other hand, the bank had had the right to choose the safest and most practicable terms, considering its own interests, for advancement of $2,000,000, representing 100% financing by the bank for the purchase of Locust Ridge properties. Martin rejected the bank's counter-proposal, which would have provided a substantial interest for him, withdrew his loan application and proceeded to try to obtain financing elsewhere. In fact, it was clearly shown that appellant, during his negotiations with the bank, had seriously attempted to obtain the necessary financing from at least two other sources and that he would readily have dealt with either source, to the exclusion of the bank, if the money had been available to him.

Moreover, the bank had required that a favorable report be obtained from DeLaat as to sufficiency of gas reserves under

Martin's possible obligation under his sub-option from Jett, and the DeLaat report stated that such reserves were insufficient. The bank further objected to the one-eighth override which Jett was to receive under the sub-option, at least until the proposed loan was paid. No unequivocal waiver from Jett was ever obtained by Martin or anyone else. Regardless of any other consideration, the bank did what it had the lawful right to do—refuse the loan if it so desired. This would have been true even though the loan application had not been finally terminated by mutual consent. All arrangements which Martin might have had with the bank were thereby ended. See Allison v. Home-Stake Production Co. v. C. W. Staats, 362 F.2d 751, (10th Cir. 1966); Booth v. Wilson, 339 S. W.2d 388, (Tex.Civ.App.), writ ref., n.r.e.; Burkett v. Snakard, 365 P.2d 1006, (Okl. 1961).

There was no evidence that the bank and Martin were partners or joint adventurers, though Bailey referred to such arrangements in correspondence with Martin. A reading of the record clearly discloses that such relationship might have been created if Martin had not terminated or abandoned his dealings with the bank in connection with his loan proposal.

Martin continually contended that the bank's refusal of the loan was a premeditated, last minute action which effectively destroyed his sub-option at a late hour on the final day. But we believe the record reflects as a matter of law that appellant had extended his non-exclusive option from January 10, 1961 until January 25, 1961, and that he could have purchased the properties until March 9, 1961 if he had raised the money. He simply was unable to do so. Jett testified that he was always ready and willing to give Martin the plant if Martin could raise the money, and Martin's own testimony confirmed this fact.

Texas courts recognize a cause of action for improper interference with contractual relationships, and the unen-

forceability of the contract is usually no defense to an action for tortious interference with its performance. Clements v. Withers, 437 S.W.2d 818, (Tex.), where recovery was allowed for tortious inducement of breach of an existing contract; Raymond v. Yarrington, 73 S.W. 800, (Tex.Sup.). Our courts have also recognized a cause of action for tortious and wrongful interference with advantageous business relationships. Cooper v. Steen, 318 S.W.2d 750, 757, (Tex.Civ.App.), no writ hist., and cases there cited. And see Pope v. Garrett, 147 Tex. 18, 211 S.W. 2d 559. It need not be absolutely certain that the prospective contract would have been made were it not for such interference. A reasonable assurance thereof in view of all the circumstances, is generally sufficient. 86 C.J.S. Torts § 43, p. 959. But where there is no contract, as here, a party does not have a right to be free from competition, but instead merely has the right to be free from malicious interference with the right to conduct negotiations that have a reasonable probability of resulting in a contract. There is no evidence showing malicious activities on the part of Phillips or the bank toward Martin. Phillips officials did not even know Martin. The proof shows that the proposals Phillips made during negotiations were based on legitimate business considerations and not on a desire or intent to hurt Martin individually. There is no evidence that appellees sought to persuade other lending institutions or anyone else not to make funds available to Martin or that appellees tried to impugn Martin's credit in any way. The identical deal had been offered to Phillips in early 1960, and it had then been refused. The deal had also been offered to several other parties. While Phillips' purposes in coming into the Locust Ridge transaction solely to give the bank advice and guidance might be a fact issue, it is nevertheless not an ultimate or controlling issue. The bank contacted Phillips and invited Phillips into the matter for its own benefit and legitimate purposes, and Phillips' further participation was for its legiti-

mate business interests and purposes. When Weiler said that he could not see that Phillips had any place in the transaction at all, Bailey stated to him that nobody was speaking for appellant, and that the bank would "call Phillips off." Moreover, whatever relationship Martin had with the bank, he had voluntarily withdrawn from it before any conclusion had been reached. Consequently appellant has no cause of action against Phillips for inducing any breach of contract, joint venture, or even any advantageous relationship. The bank had an unquestioned right to consult with Phillips or anyone else while it was considering whether or not to make the loan and to make any judgment it saw fit and proper. There is no malice or any other unlawful conduct shown which would alter the bank's right to refusal or mutual rescission of the business relationships. We hold that under the circumstances appellant's rights have not been violated by appellees, including Phillips, and that no tortious and malicious interference with advantageous business relationships has been shown. Delz v. Winfree, 80 Tex. 400, 16 S.W. 111, 112; Payne v. Gebhard, 136 S.W. 1118 (Tex.Civ.App.), no writ hist.; Griffin v. Palatine Ins. Co., 235 S.W. 202, 205, 238 S.W. 637 (Tex. Com.App.); Kingsbery v. Phillips Petroleum Company, 315 S.W.2d 561, 576 (Tex. Civ.App.), writ ref., n. r. e.; Celli & Del Papa v. Galveston Brewing Co., 227 S.W. 941 (Tex.Com.App.); Davis v. Alwac International, Inc., 369 S.W.2d 797, 801–802 (Tex.Civ.App.), writ ref., n. r. e.; Phillips Chemical Company v. Hulbert, 301 F.2d 747, 750 (5th Cir. 1962); Hampton v. Sharp, 447 S.W.2d 754 (Tex.Civ.App.); Law of Torts, Prosser, Sec. 124, pp. 979–980.

An examination of the pleadings in the federal court action and in this case, the opinion of the Fifth Circuit and Martin's statements in his brief as to the evidence introduced below show that the facts relied upon by Martin in the federal court were almost identical with the facts relied upon here, and that the wrong or injury allegedly suffered by him is identical in both cases and involves the same parties. The major differences were additional assertions in the federal suit concerning the annual income of defendants and relevant market areas, which allegations are necessary in a federal anti-trust suit. In both suits Martin has alleged that he had a contractual right to purchase and operate the gasoline plant and related properties. Both suits were prosecuted for the same supposed wrong that violated the same alleged right of Martin—interfering with Martin's ability to acquire an interest in the Locust Ridge properties.

Appellees contend that appellant, having lost on his anti-trust claim for identical damages arising out of identical conduct by the same appellees, now seeks to recover for the identical alleged wrong upon another legal theory. Appellees further contend that the existence of a different legal theory of recovery for the same injury does not create a separate distinct cause of action for the application of the doctrine of res judicata. What constitutes a cause of action in legal contemplation varies considerably with the context in which the existence of a cause of action arises. United States v. Memphis Cotton Oil Co., 288 U.S. 62, 77, 53 S.Ct. 278, 77 L.Ed. 619. However, we believe it is well settled that a litigant may not ordinarily split his claim and have two trials on the same alleged breach of duty. As was stated in Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L.Ed. 1069:

"A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show. The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong."

See also, Connellee v. Magnolia Petroleum Co., 54 S.W.2d 577, (Tex.Civ.App.), writ ref.; Galbreath v. Farrell, 275 S.W. 238 (Tex.Civ.App.), writ ref.; Davis v. Biggs, 182 S.W.2d 1017, 1019 (Tex.Civ.App.), writ ref.; Norman Tobacco & Candy Co. v. Gillette Safety Razor Co., 295 F.2d 362 (5th Cir. 1961); McCarthy v. Noren, 370 F.2d 845 (9th Cir. 1965).

Appellees therefore contend that by the exercise of diligence Martin could have urged his present theory in his federal court action. Having failed to do so, he should not be allowed now to try his claim piecemeal and proceed through a progression of actions in continuous litigation of one theory after another for redress of a single alleged wrong. Appellees further state that res judicata bars not only what has been litigated but also what might have been litigated in a prior suit between the same parties. Freeman v. McAninch, 87 Tex. 132, 27 S.W. 97, 99; Ogletree v. Crates, 363 S.W.2d 431 (Tex.Sup.).

■ Where such a situation as stated above exists, federal courts have jurisdiction to determine a non-federal ground for recovery under the doctrine of "pendent jurisdiction" in a proper case. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L. Ed. 1148. In United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218, the U. S. Supreme Court held, however, that the exercise of pendent jurisdiction is a matter within the discretion of the federal district courts. In the latter case the court held that jurisdiction was properly exercised over a state claim for interference with contractual relations along with a federal claim for damages alleged to have arisen from secondary boycotts in violation of Sec. 303 of the Labor Management Relations Act, 29 U.S.C. A. § 187. The exercise of jurisdiction by the federal district court was held to be proper because the state and federal claims arose from the same nucleus of operative fact and reflected alternative remedies. While we agree generally with the contentions made above, whether the federal court in its discretion would have taken jurisdiction of the non-federal grounds sought in the present action is a matter of some conjecture, and we need not base our decision strictly on the doctrine of res judicata as above set forth.

■ Estoppel by judgment applies where a party is seeking to relitigate an issue which has previously been litigated and determined in a former suit between the same parties. See McDonald, Texas Civil Practice, Sec. 7.43. The rule is well settled in Texas. Texas authorities estop a party from relitigating an issue which was controverted, involved, and determined between the same parties in a prior suit by a court of competent jurisdiction, even though the latter suit may be upon a different cause of action. Houston Terminal Land Co. v. Westergreen, 119 Tex. 204, 27 S.W.2d 526; Rio Bravo Oil Co. v. Hebert, 130 Tex. 1, 106 S.W.2d 242; Womble v. Atkins, 160 Tex. 363, 331 S.W.2d 294; Kirby Lumber Corp. v. Southern Lumber Co., 145 Tex. 151, 196 S.W.2d 387; Hanrick v. Gurley, 93 Tex. 458, 54 S.W. 347, 55 S.W. 119, 56 S.W. 330. Where an issue has been determined between the same parties by a prior final federal judgment, the Texas courts have consistently upheld a plea of estoppel by judgment. The case of Mayfield Co. v. Rushing, 133 Tex. 120, 127 S.W.2d 185, (Tex.Com.App.), op. adopted, is directly in point. See also Hayward v. City of Corpus Christi, 195 S. W.2d 995, (Tex.Civ.App.), writ ref., n. r. e. In Mayfield Co. v. Rushing, supra, it was said:

"It is elementary that if in a former suit an issue which goes to the foundation and existence of a cause of action has been litigated, such issue cannot be again litigated in a later suit, regardless of the form it may take." (Citing Hanrick v. Gurley, supra).

■ In the federal case, Martin v. Phillips Petroleum Co., 365 F.2d 629, the Fifth Circuit determined certain issues which, as in Mayfield Co. v. Rushing, go

to the foundation of this present action. Those issues were determined adversely to Martin, and that prior federal court judgment constitutes a bar to the successful prosecution of this suit. The Fifth Circuit held that Martin voluntarily withdrew from the deal and sought financing elsewhere; that Martin had no contract with the Bank and was instead engaged in nothing more than negotiations with the bank. As concerns the Jett sub-option, the Fifth Circuit held that under the Louisiana Statute of Frauds the sub-option was a nullity. Art. 2440, La.Civ.Code; Hoth v. Schmidt, 220 La. 249, 56 So.2d 412. The finding of mere negotiations alone precludes Martin's recovery under any theory of advantageous business relationship since it refutes the assertion that Martin had a reasonable assurance from the bank that the transaction would be as he originally proposed it. The court further found that Martin could never meet the condition precedent of expanding the plant to a capacity of 40 Mcf of gas per day, and that he had no experience as an operator. Jett had not subordinated his net profits interest to the loan payments. These facts negate the assertion that Martin had any likelihood of getting the transaction as he had proposed it. The above facts have been fully and clearly litigated and decided in the federal suit. They are controlling and material facts, and they cannot again be litigated in this action by the same parties.

Appellant contends, however, that the trial court erred in accepting facts found by the federal courts to the extent that they favored appellees but rejected the facts found by the federal courts to the extent that they were adverse to appellees. The facts referred to are generally found under paragraph I, 365 F.2d, pp. 631–632, and to some extent in the memorandum opinion of the federal district court. We believe however, that the facts found in favor of appellees are those which control the decision of this case, and we have considered all the findings. The fact that the federal district judge in his memorandum

opinion observed that Martin had a pending state court action does not indicate that he would have ruled differently had it not been for his knowledge of the state court action. The fact remains that rulings and findings were made on the merits of the federal action, and if it might be considered that the federal trial court referred appellant to his action in state court for trial, the federal court could not properly and did not intend to waive pleas of res judicata and estoppel by judgment under Texas law in favor of appellant under the circumstances.

■ Appellant also contends that appellees are estopped to assert res judicata and estoppel by judgment by reason of the federal case, citing such cases as Sewell Paint & Glass Co. of Texas v. Booth Lumber & Loan Co. of Texas, 50 S.W.2d 793, (Tex.Com.App.) and Long v. Knox, 155 Tex. 581, 291 S.W.2d 292. In the Sewell case the paint company in a prior suit had sued the lumber company for the price of paint sold to the lumber company. In response, the lumber company had filed a cross-action for breach of warranty, alleging that the lumber company had used the paint on several houses, that the paint had peeled, and that the lumber company was going to have to repaint the houses. The paint company filed an exception to the cross-action, taking the position that the cross-action could not accrue until the lumber company had repainted the houses. Agreeing with the paint company, the court in the first case *granted* affirmative relief by sustaining the paint company's exception to the cross-action. After repainting the houses, the lumber company then sued the paint company for reimbursement, and the paint company pleaded res judicata. The court held that the paint company was estopped to urge the defense of res judicata. The Commission of Appeals held that the paint company would not be permitted to escape liability entirely by securing a ruling in the prior suit that the cross-action could not be litigated there, and then secure a ruling later

that it ought to have been litigated there. Appellant's present contention arises by reason of appellees' motion to dismiss the federal action because of the pendency of the state case, and by reason of appellees' pleas in bar, in abatement, special exceptions and motions for summary judgment filed in the present state case, as mentioned heretofore in this opinion. In each case cited by appellant there was an affirmative ruling in the first suit which was based on the prior inconsistent position. In the federal case and in the present case the summary contentions of appellees were not successfully urged. In the cases cited by Martin, the estopped party had taken the initiative and had obtained affirmative rulings from the first court, and such affirmative rulings were entered solely because of the affirmative action of the estopped party. Such is not the situation here, and we overrule appellant's contention. See also Smith v. Chipley, 118 Tex. 415, 16 S.W.2d 269, 276, (Tex.Com.App.), op. adopted.

■ From what has been said before, it is clear that appellant has failed to make a prima facie case for the impression of a constructive trust. The Fifth Circuit held that there was no contract or agreement between Martin and the bank, only a loan application in the progress of negotiation, and there was no obligation under the circumstances from which legal rights and duties flow. The Jett sub-option had expired prior to the first contact between the bank and Phillips on January 12, 1961, and oral contracts of such nature are a nullity. There was no evidence that Martin and the bank were partners or joint venturers. The Fifth Circuit found that Martin rejected the bank's counter proposal, withdrew his loan application and proceeded in his efforts to obtain financing elsewhere. There is no proof that any kind of fiduciary relationship was created by Martin's negotiations with the bank. Appellant had no contact at all with Phillips.

■ The threshold inquiry in all constructive trust cases is whether a fiduciary relationship existed prior and apart from the transaction upon which the trust is sought to be constructed. In Consolidated Gas & Equipment Co. v. Thompson, 405 S.W.2d 333, (Tex.Sup.), it was said:

"Our holdings above cited are to the effect that for a constructive trust to arise there must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit. Such is our holding here. As stated, the fact that one businessman trusts another, and relies upon his promise to carry out a contract, does not create a constructive trust. To hold otherwise would render the Statute of Frauds meaningless.

"The usual cases of fiduciary relationship have been attorney-and-client, partners, close family relationships such as that of parent-and-child, and joint adventurers, particularly when there is an agreement among the joint adventurers to share financial gains and losses. This Court in Gaines v. Hamman, supra, [163 Tex. 618, 358 S.W.2d 557] as well as in Thigpen v. Locke, supra, [363 S.W.2d 247] recognized that a fiduciary relationship could arise outside of those relationships listed above when, over a long period of time, the parties had worked together for the joint acquisition and development of property previous to the particular agreement sought to be enforced. The proof in this case simply does not show such a relationship of the parties to come within the exceptions recognized in the *Gaines* and *Thigpen* opinions. There is no constructive trust."

See Thigpen v. Locke, 363 S.W.2d 247, (Tex.Sup.); Omohundro v. Matthews, 341 S.W.2d 401, (Tex.Sup.); Mann v. Risinger, 423 S.W.2d 626, 629, (Tex.Civ.App.), writ ref., n. r. e.; Karnei v. Davis, 409 S. W.2d 439, 442, (Tex.Civ.App.), no writ hist.; Gasperson v. Christie, Mitchell &

Mitchell Company, 418 S.W.2d 345, 356, (Tex.Civ.App.), writ ref., n. r. e.

The trial court did not err in failing to submit fact questions to the jury since as a matter of law a constructive trust could not have existed under the circumstances.

We have examined each and every contention made by appellant in this case, and we are of the opinion that the judgment of the trial court must be in all things affirmed.

Affirmed.

On Motion for Rehearing

BARRON, Justice.

Contrary to appellant's apparent position on motion for rehearing, we did not hold that the doctrine of res judicata applied in this case. What we did hold was that the doctrine of collateral estoppel or estoppel by judgment is applicable so far as findings on undisputed issues were concerned in the federal decision by the Court of Appeals for the Fifth Circuit referred to in the opinion.

We cannot ignore material findings by the Fifth Circuit in this case by the identical parties. In Mayfield Co. v. Rushing, 133 Tex. 120, 127 S.W.2d 185, 187, (Tex.Com.App.), op. adopted, the Court said:

"We think it entirely proper to look to said opinion (the Fifth Circuit) to determine the basis of its judgment affirming the action of the lower court." (Parenthesis added.)

In the federal case of Martin v. Phillips it was said:

"Martin protested Phillips being brought into the deal, and commenced a search for financing elsewhere the next day. Neither Martin nor his representative were invited or in attendance at the morning meeting which consisted of representatives of Phillips, the Bank, DeLaat, and others. At this meeting, materials furnished by Martin to the Bank were made available to Phillips. Martin was brought into the meeting that afternoon and was informed that his original proposal was not acceptable to the Bank. He was offered participation in a revised deal submitted by Phillips, whereby he would have received a three-sixteenths overall interest. Martin rejected this counter-proposal; withdrew his loan application; and proceeded in his efforts to obtain financing elsewhere. Unable to obtain such financing, his sub-option expired unexercised on January 25, 1961." (365 F.2d 629, 632.)

The federal court in an appeal from a summary judgment below in effect held that the above was undisputed evidence, and such was evidence and findings with the identical appellant and the identical appellees before the court. Martin's termination of any further dealings with the bank on January 16, as above, completely foreclosed any right he might have had to the subsequent imposition of a constructive trust. It cannot be said that a constructive trust can be imposed for acts occurring after negotiations and dealings were terminated by Martin, regardless of what his reasons or intentions were. Moreover, the prior agreements or understandings with regard to the bank's proposed financing (which appellant contends created the fiduciary relationship) of necessity had to be tentative, depending strictly upon whether the bank desired to make the loan of $2,000,000 which Martin had applied for. Appellant's only real contention, as we understand this case, is based upon his claim of wrongful interference with business relations.

Appellant still insists that he made a prima facie case for jury consideration on the ground of tortious and wrongful interference with advantageous business relations with the bank, and that Phillips and others wrongfully interfered therewith and are

therefore liable to Martin. Phillips was invited into this complicated deal by the bank either as an adviser to the bank, for Phillips' own interests, or both. In the case of Delz v. Winfree, 80 Tex. 400, 16 S.W. 111, 112, it was said:

> "'Every one has a right to enjoy the fruits and advantages of his own enterprise, industry, skill, and credit. *He has no right to be protected against competition, but he has a right to be free from malicious and wanton interference,* disturbance, or annoyance. *If disturbance or loss come as a result of competition,* or the exercise of like rights by others, it is *damnum absque injuria,* unless some superior right, by contract or otherwise, is interfered with. But if it comes from the merely *wanton or malicious* acts of others, *without the justification of competition or the service of any interest or lawful purpose,* it then stands upon a different footing.'" (Emphasis added.)

 There was obviously no contract or completed agreement involved, and we find that there was no malicious or wanton acts of which Phillips was legally guilty, though the deal was a hard one. The fact that the bank and Phillips contended that Phillips was in the deal only as an adviser to the bank, that Martin was a mere finder of the Locust Ridge deal, that Phillips had a lawsuit against the Locust Ridge plant (which was justified in that loss of income resulted from improper gas processing), and other statements and opinions offered during the negotiations do not show malicious, wanton or fraudulent interference necessary for recovery by Martin upon such a theory under the circumstances.

Appellant, however, contends that the law requires only that such interference be intentional. But we believe the Texas decisions do not so indicate. See 33 Tex. Jur.2d, p. 104, Sec. 8. Considering the facts at best in favor of appellant, the interference, if any, came as a result of lawful competition or as a result of the service of Phillips' own interest and lawful purposes. The bank was never obligated to make the loan to Martin as he proposed it, and the rejection of the loan as originally proposed was not arbitrary but was based upon reasonable and sound banking principles. Martin's oral sub-option with Jett was not simply an unenforceable contract but was a nullity as to all persons under Louisiana law. No interference with contractual rights was involved.

Yet the facts show that the bank brought Phillips into the deal without the knowledge or consent of Martin, and made certain information available to Phillips which Martin had given the bank for its evaluation of the proposed loan. The bringing in of Phillips was not surreptitious, as claimed by Martin, for appellant was notified the next day by the bank that Phillips had been consulted. Although Martin objected, the bank and Phillips arranged a meeting in Houston on January 16, 1961 to evaluate the proposed loan, and Martin was not invited to such meeting until the afternoon of the same day. The events which took place have been outlined above, which resulted in a rejection of Martin's proposed loan by the bank, a counter-offer to Martin made by the bank and Phillips, and Martin's termination of any future relations with the bank.

The authorities are somewhat at odds upon the question of what is required to prove a prima facie case in tort for wrongful interference with business relations. No fixed and definite rule can be devised.

It has been said that:

"In short, it is no tort to beat a business rival to prospective customers. Thus, in the absence of prohibition by statute, illegitimate means, or some other unlawful element, a defendant seeking to increase his own business may cut rates or prices, allow discounts or rebates, *enter into secret negotiations behind the plaintiff's back,* refuse to deal with him or threaten to discharge employees who do, or even

refuse to deal with third parties unless they cease dealing with the plaintiff, all without incurring liability." (Emphasis added.)

And in the same text it is stated further:

"The privilege of competition is limited to bona fide competition. It does not extend to situations where the defendant is not seeking to acquire the business diverted from the plaintiff for himself, but to gratify ill will or further some unrelated interest. Thus it does not extend to cases where there is no genuine competitive interest, but competition is simulated for spiteful ends or ulterior purposes * * *." Prosser on Torts, (3rd Ed.), pp. 979, 980. See and compare Restatement of the Law, Torts, Sec. 708, 709, 768 and 772; The Law of Torts, Harper & James, Sec. 6.11–6.13.

If Phillips was not solely an adviser to the bank in this difficult decision concerning a loan to Texas San Juan or to Martin, then it clearly had the right to compete with Martin for the acquisition of the Locust Ridge properties. The question here is somewhat difficult, but we believe that Phillips' participation in the deal was invited by the bank for the bank's benefit, that there is no evidence of malicious, wanton or fraudulent interference by Phillips and others, and that such participation was justified in law by competition and not with intent maliciously to injure Martin. See Goldman v. Hartford Road Building Ass'n, 150 Md. 677, 133 A. 843 (1926). Moreover, we belive that as a matter of law no reasonable likelihood was proven by appellant that the bank would make the loan as expected by Martin under the circumstances. The prerequisites to the contemplated financing were never met. Union Car Advertising Co. v. Collier, 263 N. Y. 386, 189 N.E. 463 (1934).

In our opinion, there were no material issues of fact to be submitted to the jury, and for the reasons stated here and in our original opinion, appellant's motion for rehearing is respectfully overruled.